## FINK *v.* O'NEIL.

The homestead of a defendant is not subject to seizure and sale by virtue of an execution sued out on a judgment recovered by the United States in a civil action, if, had a private party been the plaintiff, it would be exempt therefrom, by the law of the State where it is situate.

APPEAL from the Circuit Court of the United States for the Eastern District of Wisconsin.

This is a bill in equity filed by O'Neil praying for a perpetual injunction to restrain Fink, the then marshal of the United States for the Eastern District of Wisconsin, from further proceeding under a *fi. fa.*, issued upon a judgment rendered in favor of the United States in the District Court for that district, against the complainant and others, and which had been levied on real estate alleged to be his homestead, and exempt under the laws of that State from sale on execution. The premises levied on are forty acres, with a dwelling-house and appurtenances thereon, which he occupied as a residence for himself and family, consisting of his wife and seven children, the same being used for agricultural purposes, not included in any town, city, or village plot, and alleged to be of the value of $6,000 and upwards; and it is averred that the cause of action upon which the judgment was rendered was not for any debt or liability contracted prior to Jan. 1, 1849.

To this bill there was filed a general demurrer, for want of equity, which being overruled, and Fink declining to answer or plead, a decree was rendered granting the relief prayed for, from which he prosecutes this appeal.

The provision of the statute of Wisconsin on the subject of homestead exemptions, the benefit of which was secured to the appellee by the decree, is as follows: —

"A homestead to be selected by the owner thereof, consisting, when not included in any village or city, of any quantity of land, not exceeding forty acres, used for agricultural purposes, and when included in any city or village, of a quantity of land not exceeding one-fourth of an acre, and the dwelling-house thereon and its appurtenances, owned and occupied by any resident of this State, shall be exempt from seizure or sale on execution, from the lien of every

judgment, and from liability in any form for the debts of such owner, except laborers', mechanics, and purchase-money liens, and mortgages lawfully executed, and taxes lawfully assessed, and except as otherwise specially provided in these statutes," &c. Rev. Stat. Wisconsin of 1878, 783, ch. 130, sect. 2983.

*Mr. Assistant Attorney-General Maury* for the appellant.

If the law of Wisconsin exempting forty acres of land from execution is operative as against the United States, it must be on one of two grounds : —

*First*, That the law providing for executions on judgments in the Federal courts, now embodied in sect. 916, Rev. Stat., has made it so ; or,

*Second*, That Wisconsin has the power to enact a law which, *proprio vigore*, exempts the property of a debtor from execution sued out by the United States.

The law regulating final process on the common-law side of the Federal courts cannot apply to the extent of making the homestead exemption law of a State operative against the United States, whatever may be its effect as to individuals, because : 1. It is an invariable rule that statutes which derogate from the powers and prerogatives of the government, or tend to diminish or restrain any of its rights and interests, do not apply to it unless it is expressly named. *United States* v. *Herron*, 20 Wall. 251 ; *Savings Bank* v. *United States*, 19 id. 228, 239, and cases cited ; Dwarris, p. 523 ; Sedgw. Stat. and Const. L., pp. 105, 395, ed. 1857. 2. Sect. 916, Rev. Stat., while it adopts the State laws providing execution, does not adopt any restrictive legislation which is collateral to them. *Boyle* v. *Zacharie*, 6 Pet. 659 ; *Wayman* v. *Southard*, 10 Wheat. 1. 3. The provision of sect. 986, that executions sued out by the United States in any court thereof, in one State, may run and be executed in any State or Territory, is repugnant to the idea that such process was intended to be affected by State exemptions of any kind under sect. 916.

No law of Wisconsin exempting property from execution can be operative *proprio vigore* against the United States.

The independence and sovereignty of the national government cannot coexist with a power in the several States to

defeat or embarrass the exercise of any of its delegated powers. The States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control the operation of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government. *McCulloch* v. *Maryland*, 4 Wheat. 316; *Weston* v. *City Council of Charleston*, 2 Pet. 449; *Crandall* v. *Nevada*, 6 Wall. 35; *Dobbins* v. *Commissioners of Erie County*, 16 Pet. 435; *The Collector* v. *Day*, 11 Wall. 113; *United States* v. *Railroad Company*, 17 id. 322; *Wayman* v. *Southard, supra; Bank of United States* v. *Halstead*, 10 Wheat. 51; *Beers* v. *Haughton*, 9 Pet. 329.

The States are not expressly prohibited from interfering with the operations of the general government. The inhibition comes by necessary implication, their possession of such a power of obstruction and interference being in irreconcilable antagonism to the sovereign authority which it was the purpose of the Constitution to ordain and establish.

If, then, a State cannot subject to taxation a bank created by the United States, and made a part of its fiscal machinery, or a debenture of the United States, or the salary of a Federal officer, or a citizen passing through its territory, because such an exercise of her taxing power would tend to embarrass the operations of the general government, it would seem to follow as a necessary consequence that the law of Wisconsin could not exempt from execution the land levied on under the execution in question, without retarding, impeding, and burdening the appropriate and rightful means for the enforcement and collection of a debt due to the United States.

If a State cannot tax the final process of the Federal courts, by a parity of reasoning it cannot withdraw property from the operation of such process.

The judicial power has heretofore been considered ample for all the purposes of the Constitution. *Martin* v. *Hunter*, 1 Wheat. 304; *Tennessee* v. *Davis*, 100 U. S. 258. But it must hereafter be regarded as a delusion, if the several States can determine whether any, and, if any, how much, of a defendant's property may be seized under an execution sued out of a Federal court at the instance of the United States.

There was no opposing counsel.

MR. JUSTICE MATTHEWS, after stating the case, delivered the opinion of the court.

The statutory provision in relation to homesteads was enacted by Wisconsin in express compliance with a constitutional injunction, wherein it is declared, in the seventeenth section of the Bill of Rights, that " the privilege of the debtor to enjoy the necessary comforts of life shall be recognized by wholesome laws." *Phelps* v. *Rooney*, 9 Wis. 70, 83.

It has been the constant policy of the State in this legislation, as construed by many decisions of its Supreme Court, to favor by liberal interpretations the exemptions in favor of the debtor. " For it cannot be denied," says that court, in *Hanson* v. *Edgar*, 34 id. 653, 657, " that in all the enactments found in our statute books in regard to homestead exemption, the most sedulous care is manifest to secure the homestead to the debtor and to his wife and family against all debts not expressly charged upon it."

We have found no case in which the question has been raised, or where there has been any expression of judicial opinion, whether the exemption would prevail or not, as to judgments in favor of the State; but we do not doubt, from the language of the constitutional and statutory provisions, and the rules of construction followed in other cases, that it would be held by its courts, if the question should be directly made, that the State, except as to taxes, which are expressly excepted, would be bound by the exemption.

In *Doe, ex dem. Gladney*, v. *Deavors*, 11 Ga. 79, it was decided by the Supreme Court of Georgia, in 1852, that the State was bound by acts of the legislature exempting certain articles of personal property from levy and sale for debts, for the benefit of the wife and children of the debtor, so that they could not be seized and sold under execution for the payment of taxes. The court said, p. 89 : " These laws are founded in a humane regard to the women and children of families. The preamble to the act of 1822 announces the grounds on which the legislature acted. 'Whereas' (is its language) 'it does not comport with justice and expediency to deprive innocent and helpless women and children of the means of subsistence, be it therefore enacted,' &c. . . . . In our judgment, the State

falls within the operation of a public law, passed for the benefit of the poor, and the State is within the policy of our own legislation upon this subject-matter."

Mr. Thompson, in his Treatise on Homesteads and Exemptions, sect. 386, says: " In many of the States this question is determined by the express provisions of statutes, which declare, in various terms, that nothing shall be exempt from execution where the debt, other than public taxes, is due the State ; or where the debt is for public taxes legally assessed upon the homestead or other property ; or where the demand is for a public wrong committed, punished by fine. But where the question has arisen, in the silence of statutes, the highest courts of the States, with two exceptions, have held otherwise."

*Commonwealth* v. *Cook*, 8 Bush (Ky.), 220, which is one of the exceptions referred to, is shown, however, to have been materially qualified by the decision in *Commonwealth* v. *Lay*, 12 id. 283. *Brooks* v. *The State*, 54 Ga. 36, turned on the point that the exemption claimed operated retrospectively, and was disallowed on the authority of *Gunn* v. *Barry*, 15 Wall. 610. So that in point of fact the decisions of State courts upon the point are practically unanimous.

It is said, however, that the laws of the State creating these exemptions are not laws for the United States; and this is certainly true, unless they have been made such by Congress itself. This has not been an open question in this court since the decision in *Wayman* v. *Southard*, 10 Wheat. 1, and *Bank of the United States* v. *Halstead*, id. 51. Mr. Justice Thompson, delivering the opinion of the court in the latter case, said: " An officer of the United States cannot, in the discharge of his duty, be governed and controlled by State laws, any further than such laws have been adopted and sanctioned by the legislative authority of the United States. And he does not, in such case, act under the authority of the State law, but under that of the United States, which adopts such law. An execution is the fruit and end of the suit, and is very aptly called the life of the law. The suit does not terminate with the judgment and all proceedings on the execution are proceedings in the suit," &c. In *Wayman* v. *Southard*, Mr. Chief

Justice Marshall had said that the proposition was "one of those political axioms, an attempt to demonstrate which would be a waste of argument not to be excused."

The question, therefore, is, whether the United States, by an appropriate legislative act, has adopted the laws of Wisconsin exempting homesteads from execution, and, if at all, whether they apply in cases of executions upon judgments in favor of the United States.

Sect. 916, Rev. Stat., is as follows: " The party recovering a judgment in any common-law cause in any Circuit or District Court, shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor, as are now provided in like causes by the laws of the State in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such Circuit or District Courts ; and such courts may, from time to time, by general rules, adopt such State laws as may hereafter be in force in such State in relation to remedies upon judgments as aforesaid, by execution or otherwise."

This provision is part of the sixth section of the act of June 1, 1872, c. 255, entitled " An Act to further the administration of justice," and has in its present form been in force since that day. It is the result of a policy that originated with the organization of our judicial system. The fourteenth section of the act of Sept. 24, 1789, c. 20, commonly known as the Judiciary Act, provided that the courts of the United States should have " power to issue writs of *scire facias, habeas corpus,* and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law ; " and this was held to embrace executions upon judgments. *Wayman* v. *Southard,* 10 Wheat. 1. The act of Sept. 29, 1789, c. 21, entitled " An Act to regulate processes in the courts of the United States," enacts " that until further provision shall be made, and except where by this act or other statutes of the United States is otherwise provided, the forms of writs and executions, except their style and modes of process and rates of fees, except fees to judges, in the Circuit and District Courts, in suits at common law, shall be the same in each State respec-

tively as are now used or allowed in the Supreme Courts of the same."

This act was temporary, and expired by its own limitation at the end of the next session of Congress. The act of May 8, 1792, c. 34, provided that the forms of writs, executions, and other process, and the forms and modes of proceeding in suits at common law, should continue to be the same as authorized by the act of 1789, " subject, however, to such alterations and additions as the said courts respectively shall in their discretion deem expedient, or to such regulations as the Supreme Court shall think proper, from time to time, by rule to prescribe to any Circuit or District Court concerning the same." This legislation came under review in this court in *Wayman* v. *Southard* and *Bank of the United States* v. *Halstead*, in the latter of which it is said, 10 Wheat. 60 : " The general policy of all the laws on this subject is very apparent. It was intended to adopt and conform to the State process and proceedings as the general rule, but under such guards and checks as might be necessary to insure the due exercise of the powers of the courts of the United States. They have authority, therefore, from time to time, to alter the process in such manner as they shall deem expedient, and likewise to make additions thereto, which necessarily implies a power to enlarge the effect and operation of the process."

This discretionary power in the courts of the United States was restricted by the act of May 19, 1828, c. 68, so that thereafter writs of execution and other final process issued on judgments rendered in any of the courts of the United States, and the proceedings thereupon, should be the same, except their style, in each State respectively, as were then used in the courts of such State ; provided, however, that it should be in the power of the courts, if they saw fit in their discretion, by rule of court, so far to alter final process in said courts as to conform the same to any change which might be adopted by the legislatures of the respective States for the State courts.

It will be seen from this provision that it was thereafter prohibited to the courts of the United States either to adopt or recognize any form of execution, or give any effect to it, except such as was, at the time of the passage of the act, or had sub-

sequently become at the time of their adoption, a writ author-
ized by the laws of the State. The same provision has ever
since been continued in force, and is now embodied in sect.
916 of the Revised Statutes, already quoted.

In *Beers* v. *Haughton*, 9 Pet. 329, which was governed by the
act of 1828, it was held that " the words, ' the proceedings on
the writs of execution and other final process,' must, from their
very import, be construed to include all the laws which regu-
late the rights, duties, and conduct of officers in the service of
such process, according. to its exigency, upon the person or
property of the execution debtor, and also all the exemptions
from arrest or imprisonment under such process created by
those laws."

It is further to be observed that no distinction is made, in
any of these statutes on the subject, between executions on
judgments in favor of private parties and on those in favor of
the United States. And as there is no provision as to the
effect of executions at all, except as contained in this legisla-
tion, it follows necessarily that the exemptions from levy and
sale, under executions of one class, apply equally to all, includ-
ing those on judgments recovered by the United States. The
general power to issue process, originally conferred by sect.
14 of the Judiciary Act of 1789, which now appears as sect.
716, Rev. Stat., as being *in pari materia* with that contained
in sect. 916, must be construed as subject to the same limita-
tions, especially as the general power is confined in express
terms to writs not specifically provided for by statute, and
hence, *ex vi termini*, embraces none included in the subsequent
section. Besides, as was said by Mr. Chief Justice Marshall,
in *Wayman* v. *Southard*, " this section provides singly for is-
suing the writ, and prescribes no rule for the conduct of the
officer while obeying its mandate."

As the statute of Wisconsin, exempting homesteads from
levy and sale upon executions, was in force at the time the act
of Congress of June 1, 1872, c. 255, took effect, and has re-
mained so continuously from that time, it also follows that the
exemption has thereby become a law of the United States
within that State, and applies to executions issued upon judg-
ments in. civil causes recovered in their courts in their own

name and behalf, equally with those upon judgments rendered in favor of private parties. Laws of Wisconsin for 1848, pp. 40, 41; Rev. Stat. Wisconsin for 1871, § 23, p. 1548.

This conclusion cannot be avoided by the consideration which has been urged upon us, that the process acts do not limit the sovereign rights of the United States, upon the principle that the sovereign is not bound by such laws, unless he is expressly named. These laws are the expression of the sovereign will on the subject, and are conclusive upon the judicial and executive officers to whom they are addressed; and as they forbid the issue of an execution in every case, except subject to the limitations which they mention, and as there is no authority to issue an execution in any case whatever, except as conferred by them, the sovereign right invoked is left without the means of vindication. The United States cannot enforce the collection of a debt from an unwilling debtor, except by judicial process. They must bring a suit and obtain a judgment. To reap the fruit of that judgment they must cause an execution to issue. The courts have no inherent authority to take any one of these steps, except as it may have been conferred by the legislative department; for they can exercise no jurisdiction, except as the law confers and limits it. And if the laws in question do not permit an execution to issue upon a judgment in favor of the United States, except subject to the exemptions which apply to citizens, there are no others which confer authority to issue any execution at all. For, as was said by Mr. Justice Daniel, in *Cary* v. *Curtis*, 3 How. 236, 245, "the courts of the United States are all limited in their nature and constitution, and have not the powers inherent in courts existing by prescription or by the common law."

This objection is also met expressly by the decision of this court in *United States* v. *Knight*, 14 Pet. 301. It was there decided that the act of May 19, 1828, c. 68, gives the debtors imprisoned under executions from the courts of the United States, at the suit of the United States, the privilege of jail limits in the several States, as they were fixed by the laws of the several States at the date of that act. It was there objected, as here, that the provision of the statute did not

embrace executions issued on judgments rendered in favor of the United States, upon the ground that the United States are never to be considered as embraced in any statute, unless expressly named. Mr. Justice Barbour delivered the opinion of the court, and said: " The words of this section being ' that writs of execution and other final process issued on judgments and decrees rendered in any of the courts of the United States,' it is obvious that the language is sufficiently comprehensive to embrace them, unless they are to be excluded by a construction founded upon the principle just stated." Referring to the maxim *nullum tempus occurrit regi*, he says it rests on the ground that no laches shall be imputed to the sovereign ; but he adds : " Not upon any notion of prerogative ; for even in England, where the doctrine is stated under the head of prerogative, this, in effect, means nothing more than that this exception is made from the statute for the public good ; and the King represents the nation. The real ground is a great principle of public policy, which belongs alike to all governments, that the public interest should not be prejudiced by the negligence of public officers to whose care they are confided. Without undertaking to lay down any general rule as applicable to cases of this kind, we feel satisfied that when, as in this case, a statute, which proposes only to regulate the mode of proceeding in suits, does not divest the public of any right, does not violate any principle of public policy ; but, on the contrary, makes provisions, in accordance with the policy which the government has indicated by many acts of previous legislation, to conform to State laws in giving to persons imprisoned under their execution the privilege of jail limits ; we shall best carry into effect the legislative intent by construing the executions at the suit of the United States to be embraced within the act of 1828."

The same line of reasoning was adopted by this court in *Green* v. *United States*, 9 Wall. 655. It was there held that the act of July 2, 1864, c. 210, which enacts that in courts of the United States there shall be no exclusion of any witness in civil actions, " because he is a party to or interested in the issue tried ; " and the amendatory act of March 3, 1865, c. 113, making certain exceptions to the rule, apply to civil actions

in which the United States are a party as well as to those between private persons. It was argued by the Attorney-General that the statutes were meant to give both parties an equal standing in court in respect to evidence; that the United States not being able to testify, a party opposed to them should not be allowed to do so either; and that, independently of this, it was a rule of construction that " the King is not bound by any act of Parliament, unless he be named therein by special and particular words." Mr. Justice Bradley, who delivered the opinion of the court, replying to this argument, said: " It is urged that the government is not bound by a law unless expressly named. We do not see why this rule of construction should apply to acts of legislation which lay down general rules of procedure in civil actions. The very fact that it is confined to *civil* actions would seem to show that Congress intended it to apply to actions in which the government is a party as well as those between private persons. For the United States is a necessary party in all criminal actions, which are excluded *ex vi termini;* and if it had been the intent to exclude all other actions in which the government is a party, it would have been more natural and more accurate to have expressly confined the law to actions in which the government is not a party, instead of confining it to *civil* actions. It would then have corresponded precisely with such intent. Expressed as it is, the intent seems to embrace, instead of excluding, civil actions in which the government is a party. Nothing adverse to this view can be gathered from the exceptions made in the amendment passed in 1865." See also *United States* v. *Thompson,* 93 U. S. 586; *United States* v. *Railroad Company,* 105 id. 263.

And although it has been decided by the highest judicial tribunals in England — *Feather* v. *The Queen,* 6 B. & S. 257; *Dixon* v. *London Small Arms Co.,* 1 App. Cas. 632 — that the sovereign is entitled to the use of a patented process or invention without compensation to the patentee, because the privilege granted by the letters-patent is granted against the subjects only, and not against the crown, a contrary doctrine was held by this court in *James* v. *Campbell,* 104 U. S. 356, to prevail in this country. Mr. Justice Bradley, delivering the

opinion of the court in that case, said : " The United States has no such prerogative as that which is claimed by the sovereigns of England by which it can reserve to itself, either expressly or by implication, a superior dominion and use, in that which it grants by letters-patent to those who entitle themselves to such grants. The government of the United States, as well as the citizen, is subject to the Constitution ; and when it grants a patent, the grantee is entitled to it as a matter of right, and does not receive it, as was originally supposed to be the case in England, as a matter of grace and favor."

It is true that in *United States* v. *Herron*, 20 Wall. 251, it was decided that a debt due to the United States is not barred by the debtor's discharge with certificate under the Bankrupt Act of 1867 ; but in that case Mr. Justice Clifford took pains, by a careful collation of numerous provisions of the statute, to show that the words " creditor or creditors," as contained in the act, did not include the United States, adopting and extending the definition by Mr. Justice Blackburn, in *Woods* v. *De Mattos*, 3 Hurl. & Colt. 987, 995, because used in the sense of persons having a claim which can be proved under the bankruptcy, and not required by the act to be paid in full in preference of all others. But the Bankrupt Act furnished clear evidence of the policy of Congress in reference to exemptions of property from sale for the payment of debts, by excepting from its operation personal property, necessary for the use of the family, to the amount of $500, and such other property as was exempt from execution by the laws of the United States and of the State of the debtor's domicile. Rev. Stat., sect. 5045. And Congress, since the passage of the act of May 20, 1862, c. 75, providing for the acquisition of homesteads for actual settlers upon the public lands, has made their exemption from sale on execution a permanent part of the national policy, by declaring that lands so acquired shall not " in any event become liable to the satisfaction of any debt contracted prior to the issuing of the patent therefor." Rev. Stat., sect. 2296 ; *Seymour* v. *Sanders*, 3 Dill. 437 ; *Russell* v. *Lowth*, 21 Minn. 167.

If a contrary construction to the process acts should be given, on the ground that they do not include the United

States, which, although a litigant, continues nevertheless to exercise the prerogatives of a sovereign, it would follow that they might resort to any writ known to the common law, however antiquated or obsolete, and in defiance of the progress of enlightened legislation 'on that subject, revive all the hardships of imprisonment for debt, even without the liberty of local statutory jail limits. But that this is not within the meaning of these acts of Congress, we have positive and plenary proof in sect. 1042 of the Revised Statutes. This was sect. 14 of the act of June 1, 1872, c. 255. It provides that "when a poor convict sentenced by any court of the United States to be imprisoned and pay a fine, or fine and cost, or to pay a fine, or fine and cost, has been confined in prison thirty days solely for the · non-payment of such fine, or fine and cost, such convict may make application in writing to any commissioner of the United States court in the district where he is imprisoned, setting forth his inability to pay such fine, or fine and cost, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter; and if on examination it shall appear to him that such convict is unable to pay such fine, or fine and cost, and that he has not any property exceeding twenty dollars in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him " an oath, the form of which is set out, in which he swears that he has not any property, real or personal, to the amount of twenty dollars, except such as is by law exempt from being taken on civil precept for debt by the laws of .the State where the oath is administered, and that he has no property in any way conveyed or concealed, or in any way disposed of, for his future use or benefit. "And thereupon," the statute proceeds, "such convict shall be discharged," &c. This section is repeated as sect. 5296, Rev. Stat., under the title, Remission of fines, penalties, and forfeitures.

Nothing can be more clear than this, as a recognition by Congress that in case of executions upon judgments in civil actions the United States are subject to the same exemptions as apply to private persons by the law of the State in which

the property levied on is found ; and that, by this provision in favor of poor convicts, it was intended, even in cases of sentences for fines for criminal offences against the laws of the United States, that the execution against property for its collection should be subjected to the same exemptions as in civil cases.

In *Magdalen College Case*, 11 Rep. 66 *b*, Lord Coke, referring to *Lord Berkley's Case*, Plowd. Com. 233, 246, declares that it was there held that the King was bound by the statute *De Donis*, 13 Edw. I. c. 1, because, for other reasons, " it was an act of preservation of the possession of noblemen, gentlemen, and others," and " the said act," he continues, " shall not bind the King only, where he took an estate in his natural capacity, as to him and the heirs male of his body, but also when he claims an inheritance as King by his prerogative." By parity of reasoning based on the declared public policy of States, where the people are the sovereign, laws which are acts of preservation of the home of the family exclude the supposition of any adverse public interest, because none can be thought hostile to that, and the case is brought within the humane exception that identifies the public good with the private right, and declares " that general statutes which provide necessary and profitable remedy for the maintenance of religion, the advancement of good learning, and for the relief of the poor, shall be extended generally according to their words; " for civilization has no promise that is not nourished in the bosom of the secure and well-ordered household.

*Decree affirmed.*