UNITED STATES v. HUGHES et al.

(District Court, W. D. Pennsylvania. December 17, 1892.)

No. 10.

1. COURTS (§ 376*)—STATE LAWS AS RULES OF DECISION IN FEDERAL COURTS—WITNESSES.

Under Rev. St. § 858 (U. S. Comp. St. 1901, p. 659), providing that in all other respects than those specified the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, in equity, and in admiralty, does not apply to criminal cases tried in the federal courts, where the competency of witnesses is to be determined by the law of the state in which the court is held as it existed when the courts of the United States were established by the judiciary act of 1789.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 984; Dec. Dig. § 376.*

State laws as rules of decisions in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 333.]

2. COURTS (§ 376*)—STATE LAWS AS RULES OF DECISION IN FEDERAL COURTS—WITNESSES.

A person convicted of and sentenced for murder or other infamous crime in Pennsylvania in 1789, on the establishment of the federal courts, was incompetent to testify as a witness in the state courts, and was therefore incompetent to testify in criminal trials subsequently held in the federal courts sitting in that state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 984; Dec. Dig. § 376.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WITNESSES (§ 49*)—DISQUALIFICATION—CONVICTION OF CRIME—PARDON—EF-
FECT.

Pardon of a person convicted of an infamous crime, whether legislative
or executive, restores the person's competency to testify as a witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 116; Dec. Dig.
§ 49.*]

4. CONSTITUTIONAL LAW (§ 50*)—DISTRIBUTION OF GOVERNMENTAL POWERS—
POWER TO PARDON.

The power to pardon having been vested in the Legislature by the Con-
stitution of Pennsylvania, as well as in the executive, the grant of power
to the executive was no limitation on the right of the Legislature also to
exercise the power; and hence the failure of the Legislature to exercise
such power until the passage of Act March 31, 1860 (Purd. Dig. p. 469,
par. 357), did not affect the validity of such act or pardons granted pur-
suant thereto.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 48, 49;
Dec. Dig. § 50.*]

5. WITNESSES (§ 49*)—COMPETENCY—CONVICTS—PARDON.

Act Pa. March 31, 1860, § 181 (Purd. Dig. p. 469, par. 357) provides that
where any person hath been or shall be convicted of any felony not punish
able with death, or any misdemeanor punishable with imprisonment at
labor, and hath endured or shall endure the punishment for which such
offender hath been or shall be adjudged for the same, the punishment so
endured shall have the like effects and consequences as a pardon by the
Governor. *Held* that, where a person convicted of murder in the second
degree had served the term of imprisonment imposed therefor and had
been released, such service operated as a legislative pardon, with all the
consequences flowing therefrom, and operated to make the offender com-
petent to testify as a witness thereafter in criminal trials in federal courts
sitting in that state.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 118; Dec. Dig.
§ 49.*]

6. PARDON (§ 11*)—AMNESTY—DISTINCTION.

"Pardon" is granted to an individual criminal by name, while "amnesty"
is granted to classes of offenders or communities. They differ, not in kind,
but solely in the number they severally affect.

[Ed. Note.—For other cases, see Pardon, Cent. Dig. §§ 24 26; Dec. Dig.
§ 11.*

For other definitions, see Words and Phrases, vol. 6, pp. 5168–5172; vol.
8, p. 7745; vol. 1, p. 373.]

Thomas Hughes and others were convicted of robbing certain post
offices, and they apply for a new trial. Denied.

Walter Lyon, for the United States.
William J. Breene, for defendants.

BUFFINGTON, District Judge. This is a motion for a new trial,
and the reason alleged is the admission of the witness Hull to testify
against the objection of the other defendants. Michael Coleman,
Thomas Hughes, and Hull, the witness, were jointly indicted under
section 5478, Rev. St. (U. S. Comp. St. 1901, p. 3696), for breaking
into and robbing a number of post offices. When the case was called
for trial, Hull, who had previously confessed to the government of-
ficers his own guilt and that of his codefendants, entered a plea of
guilty. The other defendants pleaded not guilty. Hull being called
as a witness by the government, the defendants made objections to him

as being incompetent. To support their objection they exhibited to the court a record of Hull's conviction in the court of oyer and terminer of Allegheny county, Pa., of the crime of murder in the second degree. In pursuance thereof he was sentenced to 12 years' imprisonment, which sentence he had served. The objection was overruled, Hull allowed to testify, and the defendants found guilty. The question is again raised on motion for new trial.

The questions bearing on Hull's competency may be briefly stated in the position taken by counsel. It is contended by defendants' counsel, first, that in criminal trials in the United States courts in Pennsylvania the law of that state as it existed at the passage of the judiciary act of 1789, in reference to the admission of evidence, must govern; and, second, that Hull, having been convicted of and sentenced for the crime of murder, which is an infamous one, would not have been a competent witness in Pennsylvania in 1789, and is therefore now incompetent.

On behalf of the government it is alleged, first, that while the conviction and sentence of Hull in the state court of Pennsylvania, as stated, might have rendered him incompetent in all the courts of that state, yet it cannot have that effect in the United States courts; second, that the crime of murder in the second degree is statutory in Pennsylvania, and did not exist until the act of 1794, that consequently it could not have rendered a man incompetent in 1789, for it did not exist, and no conviction could be had for its commission; and, third, that Hull having served his term of imprisonment, this, under Act March 31, 1860 (P. L. 426) § 181, amounts to and is a pardon, and he is therefore competent.

The first position of defendants' counsel, viz., that the criterion in the admission of evidence is the law as it existed in 1789, is well taken. Section 858, Rev. St. (U. S. Comp. St. 1901, p. 659), after certain provisions not here pertinent, provides:

"In all other respects the laws of the states in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law and in equity and admiralty."

At first view it might seem this included criminal cases; but the contrary has been decided. In United States v. Reid, 12 How. 363, 13 L. Ed. 1023, the witness Clemens was rejected in 1851 in a criminal trial in the Circuit Court as being incompetent under the law as it existed in Virginia in 1789, although an act passed in 1849 made him competent. This ruling was affirmed by the Supreme Court; Chief Justice Taney (speaking of section 34 of the act of September 24, 1789 [U. S. Comp. St. 1901, p. 581], of which section 858, quoted above, is a substantial re-enactment) saying:

"The language of this section cannot upon any fair construction be extended beyond civil cases at common law, as contradistinguished from suits in equity. So far as concerns rights of property, it is the only rule that could be adopted by the courts of the United States and the only one that Congress had the power to establish. And the section above quoted was merely intended to confer on the courts of the United States the jurisdiction necessary to enable them to administer the laws of the states. But it could not be supposed, without very plain words to show it, that Congress intended to give to the states the power of prescribing the rules of evidence in trials for offenses against the

United States. For this construction would in effect place the criminal jurisprudence of one sovereignty under the control of another. * * * The law by which, in the opinion of this court, the admissibility of testimony in criminal cases must be determined, is the law of the state as it was when the courts of the United States were established by the judiciary act of 1789."

This doctrine was followed in the late case of Logan v. United States, 144 U. S. 302, 12 Sup. Ct. 629, 36 L. Ed. 429, where Mr. Justice Gray, after a full discussion of the question, says:

"For the reasons above stated, the provision of section 858 of the Revised Statutes, that 'the laws of the states in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law and in equity and admiralty,' has no application to criminal trials; and, therefore, the competency of witnesses in criminal trials in the courts of the United States held within the state of Texas is not governed by a statute of the state which was first enacted in 1858, but, except so far as Congress has made specific provisions upon the subject, is governed by the common law, which, as has been seen, was the law of Texas before the passage of that statute and at the time of the admission of Texas into the Union as a state."

There is no doubt that a person convicted of and sentenced for murder, it being an infamous crime, would have been incompetent in the courts of Pennsylvania in 1789. Conceding for the purposes of this case that a conviction and sentence for murder in the second degree would have the same effect, the question then arises: Is not Hull a competent witness by virtue of the 181st section of the act of March 31, 1860 (Purd. Dig. p. 469, par. 357)? The section is as follows:

"Where any person hath been or shall be convicted of any felony, not punishable with death, or any misdemeanor punishable with imprisonment at labor, and hath endured or shall endure the punishment to which such offender hath been or shall be adjudged for the same, the punishment so endured shall have the like effects and consequences as a pardon by the Governor, as to the felony or misdemeanor whereof such person was so convicted."

As to the effect of a pardon in restoring competency there is no doubt. It has always been so held in Pennsylvania (see Hoffman v. Coster, 2 Whart. 468, and Miller on the Competency of Witnesses, pp. 18–19), and in the courts of the United States (see Boyd v. United States, 142 U. S. 450, 12 Sup. Ct. 292, 35 L. Ed. 1077, and Logan v. United States, 144 U. S. 303, 12 Sup. Ct. 617, 36 L. Ed. 429). But is this act in effect a pardon, or is it an enabling statute, passed since 1789, and which comes within the spirit of the court's prohibition in United States v. Reid, supra? where it was said:

"But no law of a state, made since 1789, can affect the mode of proceeding or the rules of evidence in criminal cases."

We are of opinion the latter is not the true construction of this statute. It is true it indirectly changes the incompetency of many persons; but this follows from the scope of the application of the act, and not from the change of any rule or principle of evidence. The released criminal, who, without being mentioned by name, is pardoned by its comprehensive terms, and thereby made competent, is made so in no different way than he would be were he pardoned by name by the executive. While pardons are usually granted by the executive, the pardoning power by no means is confined to that branch

of the government. In England, pardons by act of Parliament were not infrequent, and they are placed on a higher level than the king's. Blackstone, vol. 4, p. 401, says:

"A pardon by act of Parliament is more beneficial than by king's charter, for a man is not bound to plead it, but the court must, ex officio, take notice of it."

Which words were quoted with approval by Chief Justice Marshall in United States v. Wilson, 7 Pet. 162, 8 L. Ed. 640, where he says:

"The reason why a court must, ex officio, take notice of a pardon by act of Parliament, is that it is considered as a public law, having the same effect on the case as if the general law punishing the offense had been repealed or annulled."

From the very nature of government, it requires no reasoning to prove the self-evident proposition that in Pennsylvania the power of pardon was vested in the legislative branch by the inherent power of the supreme lawmaking power and in the executive by constitutional provision. The grant of this power to the executive was no limitation on the right of the power granting it to exercise it also. Because this legislative power of pardon was dormant, so far as this case is concerned, until 1860, when the act in question was passed, does not stamp it as being of the nature which Justice Taney alluded to. The right of pardon by executive and legislative branches, with all the well-understood consequences, including restored competency, existed in Pennsylvania in 1789, when Congress adopted the then rules of evidence as the criterion for future criminal trials. It must have had in mind the possibility of pardon by either branch, and the effect thereof. The subsequent exercise of that right by the legislative branch was obviously as proper as by the executive, and legislative pardon of Hull by special act of assembly (prior to the Constitution of 1874) would have restored his competency. Such being the effect if Hull were pardoned by name by the executive, there is no different effect where he is pardoned by description of a class of offenders.

Pardons are granted to individual criminals by name; amnesty to classes of offenders or communities. They differ, not in kind, but solely in the number they severally affect. We are of opinion, therefore, that the act of 1860, quoted above, was a legislative pardon or act of general amnesty. It is true it does not take effect until after the imprisonment has been served; but that makes it none the less a pardon, or its effects different. See Logan v. United States, supra. That such is the case, that it was passed as a general pardon, and intended to supply the place of the numerous pardons the Governor was called on to issue to restore the competency of convicted persons, is evidenced by the report of the commissioners of the Penal Code, who, in reporting to the Legislature for passage the section quoted, said:

"This section is new. It is founded on the principle that, if the offender has fully suffered the punishment inflicted by law upon his crimes, he should be restored to society without any further legal taint. * * * In effect, the object of this statute is at present attained through the pardon of the Governor, which is continually invoked to restore such persons to their competency as witnesses, after they have fulfilled the sentence of the law."

This citation shows the act was passed as a substitute for individual pardons, to supply their place, and to make that which had been before a matter of individual grace one of general right. Regarding this act as a legislative pardon, that it has the same effect as an executive pardon to Hull by name, we are of opinion his competency is restored, and his testimony was rightly received. The view we have taken renders it needless to discuss the first and second positions taken by the government as noted.

The motion for a new trial is overruled, and the defendants directed to be brought up for sentence.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'T Indexes