CLARK v. ALLEN, Marshal.

(District Court, W. D. Virginia. April 4, 1902.)

1. JUDGMENTS IN CRIMINAL CASES—ENFORCEMENT.

Rev. St. § 916, providing that the party recovering a judgment in any common-law cause in a federal circuit or district court shall be entitled to similar remedies on the same as are provided in like causes by the law of the state, does not apply to judgments in criminal cases.

2. SAME—CONSTRUCTION OF STATUTE.

Rev. St. § 1041, providing that judgments in criminal and penal cases as to the fine or penalty may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced, means only that the government in enforcing judgments for fines and penalties is not restricted to mere imprisonment of the defendant, but may proceed also by execution against his property.

3. SAME—HOMESTEAD EXEMPTION—ASSERTION AGAINST FINE.

Rev. St. § 1042, provides that a poor convict, who has been imprisoned because of the nonpayment of a fine, may be released on making oath that he has no property (exceeding $20 in value), except such as is by the state law exempt from being taken on "civil precept for debt." There is no United States statute expressly making a homestead in Virginia subject to fines imposed by the government. *Held* that, though the homestead laws of Virginia apply only to contract debts, and the exemption cannot be claimed against a fine due to the state, or even against a judgment for tort obtained by a private individual, the exemption may be asserted against a fine due to the United States government.

A. I. Harless, for complainant.

J. C. Blair, Asst. U. S. Dist. Atty.

McDOWELL, District Judge. At a former term J. B. Clark was tried on an indictment charging him with retailing liquor without license (Rev. St. § 3242), found guilty, and sentenced to 30 days' imprisonment and to pay a fine of $100 and costs. He served out his term of imprisonment, and, after having served 30 days on account of the nonpayment of the fine, he made the oath under Rev. St. § 1042, and was released. Thereafter fieri facias was issued directing the marshal to make the fine of $100 and $96.40 costs out of the goods, chattels, and real estate of the convict. Under this execution the marshal levied on certain real estate belonging to Clark and advertised it for sale. After the levy, but before sale, Clark filed a homestead deed, whereby he set apart as a homestead the real estate levied on, as well as certain personal property. He then applied for an injunction restraining the marshal from selling the land. On August 25, 1900, a temporary injunction was granted. The petition praying for the injunction alleges that Clark is a householder and head of a family, and that his entire estate is less in value than the amount exempt under the Virginia homestead laws. The case is before the court on a demurrer to the petition.

The only question presented by counsel is whether or not the homestead exemption can be claimed as against a judgment for a fine in favor of the government. The homestead laws of this state are unlike those generally in force, in that they apply only to contract debts. Article 11 of the state constitution reads: "Every householder or head of a family shall be entitled * * * to hold exempt from levy,

seizure, garnisheeing, or sale under any execution, order or other process, issued on any demand for any debt heretofore or hereafter contracted, his real and personal property, or either, * * * to the value of not exceeding two thousand dollars to be selected by him." Then follow certain exceptions not now of importance. The statute (section 3630, Code 1887) reads, " * * * on any demand for any debt or liability on contract * * *." The right to select property and set it apart as a homestead after judgment, but before a sale, by filing a homestead deed, is not questioned. In Whiteacre v. Rector, 29 Grat. 714, 26 Am. Rep. 420, the court of appeals of Virginia decided that the homestead exemption cannot be claimed against a fine due the commonwealth, imposed for a violation of the criminal laws. So far as I am advised, this decision, rendered in 1878, has never been overrruled, or ever questioned, by the court of appeals. I am compelled to treat it as the proper construction of the state law. In Frazier v. Baker (1881) 5 Va. Law J. 565, the court of appeals held that the homestead exemption could not be claimed against a judgment for a tort. In Burton v. Mill (1884) 78 Va. 468, the same court made the same ruling as to a judgment for damages for breach of promise to marry, holding such damages to be, not a debt contracted, but a quasi tort. It is true that the late Judge Hughes, United States district judge, Eastern district of Virginia, in Radway's Case (1877) 3 Hughes, 609, Fed. Cas. No. 11,523, held to the contrary. But the rulings of the state court of appeals (the court of last resort) are, I conceive, of higher authority on the construction of the state law. By Rev. St. § 1042, a poor convict who has been imprisoned 30 days, solely because of the nonpayment of a fine, or fine and cost, may be released on making oath that he has no property (exceeding $20 in value) except such as is by the state law exempt from being taken on civil precept for debt. This language clearly includes the property exempt from sale for a judgment on a contract debt. The bearing of this section on the question will be considered later. At present the point of most interest is to learn where, if at all, congress has shown an intent to give to the federal government in the enforcement of fines imposed in Virginia the same rights that are exercised by the state of Virginia in enforcing fines imposed by the state courts for violations of the state criminal laws. By section 916, Rev. St., the party recovering a judgment in any common-law cause in any circuit or district court shall be entitled to similar remedies upon the same as are now provided in like causes by the laws of the state. It is settled that the language—"the party recovering a judgment"—includes the government. Green v. U. S., 9 Wall. 655, 19 L. Ed. 806; Fink v. O'Niel, 106 U. S. 272, 1 Sup. Ct. 325, 27 L. Ed. 196. But this section in terms applies only in "common-law causes." If no similar statutes had been construed, we might be at liberty to treat the term "common-law causes" as including all causes, civil and criminal, other than equity or admiralty causes. But section 721, Rev. St., providing that the laws of the several states shall be regarded as the rules of decision in trials at common law in the courts of the United States, has been construed as not applying to criminal trials. U. S. v. Reid, 12 How. 361, 13 L. Ed. 1023. Section 858, Rev. St., which, after providing cer-

tain rules as to the competency of witnesses, reads, "In all other respects, the laws of the state in which the court is held shall be the rules of decision as to the competency of witnesses in the courts of the United States in trials at common law, and in equity and admiralty,"—has also been held not to include criminal trials. Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429; U. S. v. Hall (D. C.) 53 Fed. 352. In view of the similarity of the language used in the three statutes, and of the construction put upon this language by the supreme court, I do not feel at liberty to construe section 916 as applying to judgments in criminal cases.

In this connection section 1041, Rev. St., has given me some trouble. It provides that judgments in criminal and penal cases, as to the fine or penalty, may be enforced by execution against the property of the defendant in like manner as judgments in civil cases are enforced. But the best conclusion I can reach is that this section means nothing more than that the government in enforcing judgments for fines and penalties is not restricted to mere imprisonment of the defendant; that it may proceed also by execution against the defendant's property, as in civil cases. It would seem, therefore, that congress has not seen fit to provide any greater rights for the federal government when collecting fines imposed in criminal cases by execution than are given individuals in the collection of private debts. It follows that the mere fact that the state of Virginia in collecting fines is not hampered by the homestead laws does not necessarily give the same right to the federal government. It is true that in this state an individual recovering a judgment for a tort has the right to subject the homestead. But nothing follows from this fact except that, when the government recovers in Virginia in a civil action for tort, its judgment can be enforced against the tort feasor's homestead. It does not follow that the government's judgment in a criminal case can likewise be enforced against the convict's homestead. The analogy between a fine and a judgment in tort is strong; but it is only an analogy. If congress had intended that the government should have greater rights in the states where the homestead is not exempt from torts, or in the two states (Thomp. Homest. § 386) where commonwealth fines are not subject to the exemption, than in other states, it would have made some specific provision for such cases.

It is rather startling to be led to the conclusion that in this state the federal government has not as great rights in collecting fines as has the state, and that it has not even as great rights as has an individual recovering a judgment in tort. But I am forced to this conclusion, not only because of the absence of any federal legislation specifically giving the government such rights, but also because of the intent evidenced by section 1042. This section provides for the discharge from prison of a convict if he has no property, exceeding $20, except such as is exempt from civil precept for debt. This implies that the exemption is allowed the convict notwithstanding that his homestead is not by the state law exempt from process for the collection of a state criminal judgment. Otherwise, why "civil precept" for debt? Again, imprisonment for debt, or for the nonpayment of a fine, was ever imposed merely to coerce payment thereof. It would be anomalous to discharge one imprisoned for nonpayment.

of a fine, if the very affidavit made to effect his release showed that he had, or might have, property subject to the payment of the fine. If it had been the intent of congress to subject the homestead in Virginia and Georgia to fines, because those two states subject it, I think some special and specific provision would have been made as to those two states. The absence of any such provision leads to the belief that congress, whether to have uniformity throughout the United States in the collection of fines, or because it adopted the view that the homestead was intended for the benefit of the family, and as a shield against the improvidence, indolence, or criminality of the head of the family, intended that in all the states the government should have no greater rights against the homestead than the state law gives to the least favored individual judgment creditors. It is certain, as seen by its own homestead statutes, that congress has adopted the view that the general policy of the homestead exemption laws is a wise one. It is also certain, as is shown by section 1042, that, at least in the majority of the states, congress does not intend that the homestead shall be subjected to the payment of fines imposed for violations of the federal statutes. The federal government is great enough and wealthy enough to make very plausible the contention that congress intended that in every state having any sort of homestead exemption laws the families of poor convicts should have the benefit of such exemptions. These views, which, I must confess, are not entirely satisfactory, are in some measure strengthened by the following language used in the opinion in Fink v. O'Niel, 106 U. S. 272, 1 Sup. Ct. 325, 27 L. Ed. 196:

"Nothing can be more clear than this [referring to section 1042, Rev. St.] as a recognition by congress that in case of execution upon judgments in civil actions the United States are subject to the same exemptions as apply to private persons by the law of the state in which the property levied on is found: and that, by this provision in favor of poor convicts, it was intended, even in cases of sentences for fines for criminal offenses against the laws of the United States, that the execution against property for its collection should be subjected to the same exemptions as in civil cases."

It follows that the demurrer must be overruled.

No opinion is expressed as to the legality of a levy of execution on real estate in this state, since it is unnecessary to determine this question.