## Jones's Estate.

*Widow's and children's exemption—Priority over claim of United States for money paid under mistake of fact—Fiduciaries Act of June 7, 1917.*

1. The widow's or, if there be no widow or if she has forfeited her rights, the children's exemption, under section 12 of the Fiduciaries Act of June 7, 1917, P. L. 447, has priority in the distribution of an insolvent decedent's estate over the claim of the United States for money paid to the decedent in his lifetime under a mistake of fact.

U. S. Rev. Stats., §§ 3466 and 916, considered.

2. Payment of money under a mistake of fact passes title; hence, the fact that the payee died leaving a balance of the money so paid deposited in bank and remaining unused, does not warrant an order for a return in kind of the specific thing; there is, in fact, no specific thing to return; the bank is a debtor to the depositor, who, because of the overpayment, is, in turn, debtor to the Government.

THOMPSON, J., dissents.

Exceptions to adjudication. O. C. Phila. Co., July T., 1923, No. 2083.

The auditing judge, Thompson, J., filed an adjudication, from which the following is an extract:

"The moneys in the hands of the accountant, as shown by the account, amount to $453.74, and the same was claimed by the guardian of the minors on account of their exemption of $500. The United States of America presented a claim for $486.99 for moneys erroneously paid to decedent in his lifetime under the following circumstances: Annas M. Jones, the decedent, was entitled to and was awarded compensation by the United States Veterans' Bureau for disabilities received in the United States Military Service during the late war. He was also in vocational training and received a vocational allowance for himself, his wife and two children from Sept. 27, 1921, to May 16, 1922. The aggregate sum paid to him for vocational allowance was $1267.91. While he was receiving vocational allowance and under vocational training, he was not entitled to compensation payment. The Vocational Rehabilitation Act approved June 27, 1918, 40 Stat. at L. 617, expressly provides, in section 2 thereof, that no compensation shall be paid for the period during which any person is receiving vocational training and vocational training allowance. Compensation check for $1343 was paid the deceased during the period he was in vocational training, and was for adjusted compensation. This check was deposited with the Franklin Trust Company, and no other moneys were deposited by the deceased with the Franklin Trust Company. The deceased drew on said deposit, and at the time of his death left a balance of $250 of said deposit. It is admitted by both sides that the very sum remaining in the Franklin Trust Company is part of the check given by the United States to the decedent through a mistake on the part of one of the Government's employees. The actual overpayment on the adjusted accounts between the vocational and the compensation rights of the deceased under the Acts of Congress amounted to $486.99, and a portion of this overpayment has been clearly identified. It was contended on behalf of the guardian that the United States of America was a general creditor of the decedent, and as such was postponed in payment to the children's exemption of $500.

"It is clear to my mind that, in so far as the $250 remaining on deposit with the Franklin Trust Company is concerned, the United States of America is entitled to recover the same, not as a general creditor, but on the theory that it was the identical money paid under a mistake of fact, and as to the balance of the claim of the Government, it is, of course, a general creditor and postponed to the claim of the children for their exemption. Money paid under a mistake of fact can be recovered back, and the question suggests

itself as to how can it be recovered. If the identical money paid can be earmarked, such as, for example, being specie in a bag, I have no doubt that an action in replevin would lie for the same. If, however, the money were mingled with funds of the payee, there is only one way to recover the same, namely, by an action in *assumpsit.* There is no trust relation between the payor and payee from the mere fact of payment by mistake; the parties deal with each other as debtor and creditor, and, therefore, a question of trust does not arise; but even in a trust relation the money charged with the trust would have to be identified. See Girard Trust Co. *v.* Harrington, 23 Pa. Superior Ct. 615; Kunkel et al. *v.* Kunkel, 267 Pa. 163; Potter *v.* Lehigh Valley R. R. Co., 80 Pa. Superior Ct. 237."

*Israel K. Levy,* for guardian, exceptant.

*George W. Coles,* U. S. Attorney, *William J. Brady,* Assistant U. S. Attorney, and *John M. George,* attorney for U. S. Veterans' Bureau, contra.

LAMORELLE, P. J., April 26, 1924.—Annas Melton Jones died in September, 1922. His next of kin are two minor children, of whose estate a trust company is guardian. Letters of administration on his estate were granted in due course, and, upon an accounting, a balance for distribution was shown of less than $500. The guardian claimed this balance as the children's exemption under section 12 of Fiduciaries Act of June 7, 1917, P. L. 447. It was also claimed by the United States because of overpayment by the Government. The auditing judge found as facts that the decedent was entitled to, and did receive, compensation in his lifetime from the United States Veterans' Bureau for disabilities incurred while in service in the Great War; that part of the time he was also in vocational training and got an allowance for himself, his wife and children; that he was not entitled to both at the same time; that overpayments in excess of $250 were made to him, and that the $250 on deposit at the time of his death was part of these overpayments. He awarded $250 to the United States on the theory that this much had been traced into what money remained on deposit with Franklin Trust Company at the time of Jones's death; he awarded the rest, some $178, to the guardian.

The guardian filed exceptions. The United States did not. It contends, however, in its brief of arguments: First, that no title to the amount so overpaid passed, and that, therefore, it but seeks return of its own money; and, secondly, that the United States has preference over all other creditors.

We will consider the claims in order.

And, first: The Government's contention is that as an overpayment was made "under mistake of fact and contrary to law," no title passed thereto.

It cites no authority relevant in the premises for this position, nor do we know of any.

While money paid under mistake of law may not be recovered, money paid under mistake of fact may, but recovery must be had through the ordinary channels of the law.

Money paid under mistake of fact is to be recovered by an action for money had and received (Cyc., 27, 866 *V,* and notes), and the Government has always pursued such course. In United States *v.* Lalone, 44 Fed. Repr. 475, a pension was granted. It was afterwards discovered that the testimony was insufficient and improper, and a suit at law was instituted to recover the money so paid, on the theory that the pension was obtained by fraud. United States *v.* Purdy, 38 Fed. Repr. 902, was also a proceeding in the law courts to recover money paid to a pensioner under claim that the original payment was made through mistake of fact.

4 D. & C.

Negligence in making a mistake of fact does not deprive a party of his remedy on account thereof; it is the fact that one by mistake unintentionally pays money to another, to which the latter is not entitled from the former, that gives the right of action.

The mere omission to take advantage of means of knowledge within the reach of the party paying money under a mistake of facts does not prevent a recovery: See Kunkel *v.* Kunkel, 267 Pa. 163, and authorities therein cited.

The relation between the parties is that of debtor and creditor, not that of trustee and *cestui que trust.* The fact that the one who has received the excess payment has still a balance of the sum received by him, and deposited by him and remaining unused, does not warrant an order for a return in kind of the specific thing. There is, in the circumstances, no specific thing to return. By virtue of the deposit, the bank has become a debtor to its depositor, and because of the overpayment, the depositor is, in turn, a debtor to the Government.

In its supplemental brief the Government cites 18 Cyc., 191-192, and Schouler on Wills, etc. (Ed. 1915), § 1204, but none of the cases referred to are in point. They show that where no title passed to one who afterward died, the thing in question cannot form a part of his estate. This proposition no one disputes, but it begs the question at issue. The question here is not as to the right of recovery, but, on the contrary, whether that which is sought to be recovered is the Government's property, or whether title passed because of the Government's mistake of fact.

Secondly: As to the Government's preference.

A debt due to the United States has priority over any and all claims of other creditors. This priority is established by section 3466, Revised Statutes of United States, which reads as follows: "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed or absent debtor are attached by process of law as to cases in which an act of bankruptcy is committed." (Page 687 of Revised Statutes of United States, 2nd ed., 1878.)

While section 13 *(a)*, Fiduciaries Act of 1917, which is a re-enactment of section 21 of the Act of Fem. 24, 1834, P. L. 76, relating to payment of debts of a decedent, and the order of such payment, does not give the United States such preference, we must consider that preference read into our law because of earlier decisions. In Com., to the use of United States, *v.* Lewis, 6 Binney, 266 (decided in 1814), it was held that a debt due to the United States by a deceased revenue officer is entitled to priority of payment from his administrators under the law of this Commonwealth, whether the debt arose before or after the Act of Congress of March 3, 1797, 1 Stat. at L. 512, 515, which is section 3466 of the Revised Statutes. It was also held that Congress had a constitutional right to claim a preference out of the estate of a public debtor. Again, in Gregory's Estate, 11 Phila. 126 (decided in 1876), Judge Hanna ruled that the United States, under the above section of the Revised Statutes of the United States, had a preference before all other creditors in the distribution of a decedent's estate. The decedent was a marshal of the United States for the Eastern District of Pennsylvania. Upon the settlement of his accounts, it was ascertained that he was largely indebted to the Government.

Jones's Estate.

Suit was brought and judgment recovered against the administrator. The estate was insolvent, and upon the audit of the administrator's account, the auditing judge awarded payment on this judgment obtained after the debtor's death to the exclusion of all other claims. Exceptions were filed and this court dismissed them.

It follows, therefore, that the United States is entitled to the entire fund for distribution, which fund is less than $500, unless the children's claim for exemption, their mother having predeceased their father, can be upheld.

Section 916 (June 1, 1872) of Revised Statutes of the United States pro-vides as follows: "The party recovering a judgment in any common law cause in any circuit or district court shall be entitled to similar remedies upon the same, by execution or otherwise, to reach the property of the judgment debtor as are now provided in like causes by the laws of the state in which such court is held, or by any such laws hereafter enacted which may be adopted by general rules of such circuit or district court; and such courts may from time to time, by general rules, adopt such state law as may hereafter be in force in such state in relation to remedies upon judgments as aforesaid, by execution or otherwise." (Page 175 of Revised Statutes of United States, 2nd ed., 1878.)

In Fink v. O'Neil, 106 U. S. 272, the law of Wisconsin exempting forty acres of land from execution was held to be operative against the claim of the United States. It was decided that the State of Wisconsin had the power to enact a law which *proprio vigore* exempts the property of a debtor from execution sued out by the United States, the opinion of the Supreme Court being rendered by Mr. Justice Matthews. The statute of Wisconsin exempting homesteads from levy of sale from execution was in force at the time the Act of Congress of June 1, 1872, 5 Stat. at L. 196, 197, which is section 916, as aforesaid, took effect; and in his opinion Mr. Justice Matthews says, at page 279: ". . . it also follows that the exemption has thereby become a law of the United States within that state, and applies to executions issued upon judgments in civil causes recovered in their courts in their own name and behalf, equally with those upon judgments rendered in favor of private parties."

Decisions on similar lines were rendered in Thompson v. McConnell, 107 Fed. Repr. 33, by the Circuit Court of Appeals of the Fifth Circuit, in the matter of an exemption law passed by the State of Texas, and in Allen v. Clark, 126 Fed. Repr. 738, by the Circuit Court of Appeals of the Fourth Circuit, in the matter of a Virginia statute.

By analogy, in that the widow's exemption under the Acts of March 31, 1821, P. L. 178, Feb. 24, 1834, P. L. 76, April 25, 1850, P. L. 577, and April 14, 1851, P. L. 613, was an outgrowth of the debtors' exemption, and in that the Act of April 14, 1851, P. L. 613, was the law of Pennsylvania at the time the United States Statute of 1872, aforesaid, became effective, it would seem to follow that the widow (and in the instant case the wife predeceased her husband), or, in the alternative, the children, where there is no widow, or where she for legal reasons cannot take, is entitled to the exemption.

A majority of the court are of opinion that the entire fund, which is the subject of the controversy, should have been awarded to the guardian on account of the children's exemption. Judge Thompson, however, who wrote the adjudication, is of opinion that no title passed out of the Government to so much of the money overpaid by it as remained intact on deposit in the name of Annas Melton Jones in the Franklin Bank at the time of his death, and, for the reasons given by him in his adjudication, he dissents.

The exceptions are sustained.

Judge THOMPSON dissents.