CLARK BROTHERS et al., Appellees, v. MARY E. WATSON et al., Appellants.

**SUBROGATION: Sureties—Secret Sureties not Entitled to Subrogation.** A *secret* surety in a note and mortgage securing the same is not entitled to subrogation to the prejudice of subsequent mortgagees without notice of such secret relation. Secs. 3779, 3966, 3967, Code, 1897.

PRINCIPLE APPLIED: In 1885, two sisters, owning a tract of land in equal shares, mortgaged the entire tract, in order to raise money for their brother, and solely as an accommodation to him. The sisters, during the 10 years following, twice secured new loans to take up this accruing obligation, their last mortgage (duly recorded) being given in 1895, and being known as the Robb mortgage. In 1896, one sister died, and by descent the remaining sister acquired an additional one-sixth interest in said land (or a total of two thirds), and said brother, by descent and a conveyance, acquired the remaining one third. Henceforth, the title so remained. During the years 1901 to 1908, said brother repeatedly mortgaged his one-third interest, all of said mortgages being duly recorded. These subsequent mortgagees, in taking their mortgages, had no knowledge or notice that the makers of the Robb mortgage were in fact *sureties* only, and that the brother was in fact the *principal*. Held, on foreclosure, that the surviving sister, on payment of any part of the Robb mortgage, was not entitled to be subrogated to the rights of Robb, the mortgagee, to the prejudice of said subsequent mortgagees.

**TENANCY IN COMMON: Mortgage Lien—Payment—Contribution.** The right of one tenant in common to demand contribution on account of mortgage liens on the common property, arises only after payment has actually been made. *Held,* in

Vol. 180 IA.—46

case at bar, that contribution was, in effect, granted by requiring each undivided fractional part of the land to be sold for its fractional part of the mortgage.

**TENANCY IN COMMON:** Mortgages—Mortgagee not Cotenant. A
3   mortgagee of the interest of one tenant in common does not become a tenant in common with the others. It follows that such mortgagee is not bound by and not required to take notice of secret equities existing in favor of another cotenant.

PRINCIPLE APPLIED: See No. 1.

**MORTGAGES:** Priority — Unrecorded Mortgages — Notice—Evi-
4   dence. The number of witnesses is not necessarily controlling on disputed fact questions. Testimony of one witness that he did not have notice of a prior unrecorded mortgage, aided by corroborating facts and circumstances, may overcome the positive testimony of two interested witnesses that they did give such notice to first party, when the conduct of such two witnesses has not been consistent with their assertion.

LADD and PRESTON, JJ., dissent as to the finding of fact.

*Appeal from Monroe District Court.*—SENECA CORNELL,
Judge..

SATURDAY, OCTOBER 28, 1916.

OPINION ON REHEARING TUESDAY, JUNE 26, 1917.

ACTION in equity to foreclose mortgages and to establish liens and the priority thereof. There was a decree for plaintiffs, foreclosing the mortgages and determining the priority of liens and the rights of the parties. The defendant cross-petitioner People's Savings Bank appeals from the finding of the trial court that the lien of plaintiffs' mortgages was prior to that of said appellant. Mary E. Watson, a defendant and cross-petitioner, appeals from the findings of the trial court, which were against her. A more detailed statement as to the issues and facts appears in the opinion.—*Modified and affirmed.*

*J. C. Mitchell, N. E. Kendall, F. D. Everett,* and *J. C. Mabry,* for appellants.

*John T. Clarkson* and *D. W. Bates,* for appellees.

EVANS, J.—There are many parties defendant and a large number of different claims and conflicting interests, so that the record is somewhat complicated. However, most of the parties seem satisfied with the finding of the trial court, and, as before indicated, but two appealed.

1. The points in the case most serious-

1. SUBROGATION: sureties: secret sureties not entitled to subrogation.

ly argued, and perhaps the more important ones, are the points raised by the appellant Mary E. Watson in her controversy with plaintiffs and some of the other parties to the action. As to her contention, the pleadings are voluminous. Plaintiffs filed their petition for foreclosure, and later a substituted petition was filed, and by it and amendments thereto, A. C. Watson, People's Savings Bank, George L. Robb, who holds a mortgage on the property, some mechanics' lienholders and judgment creditors of A. C. Watson, including Robb Bros., who hold a judgment against A. C. Watson and appellant Mary E. Watson, were made defendants. Plaintiffs prayed, as against Mary E. Watson, that the money due on the Robb mortgage later referred to should be paid from her undivided two thirds of the 133⅓ acres, which is referred to in the record as the "irregular tract," and sometimes as the "home farm," and the same relief was prayed by the People's Savings Bank as against her by cross-petition. Answering these cross-petitions, Mary E. Watson set out the facts in relation to the Robb mortgage, which will be more fully stated later; and, by way of cross-petition against Clark Bros., the People's Savings Bank, and George L. Robb, she prayed that her cotenants' undivided one third of the irregular tract be first sold in satisfaction of the Robb mortgage, and that her undivided two thirds thereof be sold only to satisfy any deficiency remaining on said mortgage after the application thereon of the proceeds of the sale of her cotenants' undivided one-third interest, and she also prayed for general, equitable

relief. It will be noted here that Mary E. Watson by her pleadings asked that the one-third interest be first exhausted, and did not specifically ask for contribution or subrogation. The questions in regard to contribution and subrogation are argued by her, and it is claimed that she has stated the facts in regard to the matter of her executing the Robb mortgage as an accommodation for her brother, defendant A. C. Watson, and that she is entitled to raise such questions under her plea for general equitable relief. Plaintiff and the People's Savings Bank filed replies to the answer and cross-pleadings of Mary E. Watson, denying the facts she had alleged, and claiming that they were incumbrancers for a valuable consideration without notice. About the year 1882, this appellant and her sister, Rebecca Watson, both maiden ladies, became, by inheritance from their deceased parents, the owners of the irregular tract of land before referred to, and at once entered into the possession and occupancy thereof. Each owned one half. In 1885, the two sisters, who were free from debt and not engaged in any business, negotiated a loan on said real estate. When this loan matured, in 1890, a new loan was obtained for an increased amount, and the first paid off. When the second loan matured, in 1895, they obtained the money to discharge it by executing to the Equitable Life Insurance Company a mortgage for $2,000. The mortgage was extended from time to time, and, on May 11, 1911, it was assigned to George L. Robb, and is the mortgage involved in this action, and is referred to as the Robb mortgage. Robb was also interested in a judgment against A. C. Watson and appellant Mary E. Watson. This will be referred to later. After the execution of the Robb mortgage before referred to, it is alleged, and defendants A. C. Watson and Mary E. Watson so testified, and the trial court so found, that the money procured from these loans was solely as an accommodation to the

brother, A. C. Watson, upon his promise and agreement to pay the same and have the mortgage canceled and hold his sisters harmless; and that the money was turned over to him and used by him for his own benefit—no part of it was used by the sisters or for their benefit. About a year after the execution of this Robb mortgage, one of the sisters, Rebecca, died, leaving to inherit her property, her sister Mary E. (the appellant), another sister, and her brother, A. C.; so that, on Rebecca's death, Mary E. became the owner of an undivided two thirds of the irregular tract. Soon afterwards, A. C. obtained the other sister's one-sixth interest, and thereby became vested with the undivided one third. The title has so remained ever since, Mary E. owning an undivided two thirds, and her brother, A. C., being the owner of an undivided one third. Robb was also interested in a judgment against Mary E. and A. C. Watson, which was a lien on lands owned by them. The date of this judgment is March 6, 1906.

In addition to the two mortgages before referred to, given by A. C. Watson to plaintiffs, he also executed to them another mortgage covering the irregular tract, which was dated February 13, 1906. Plaintiff also became the owner by assignment of another mortgage executed by A. C. Watson, dated January 8, 1908, covering the irregular tract, and another mortgage covering the same tract, dated February 13, 1906. These mortgages were all foreclosed by the decree in this case.

The real question in the case is whether the Robb mortgage should be satisfied out of the undivided one third of the irregular tract owned by A. C. Watson, or whether it should be satisfied in whole or in part out of the undivided two-thirds interest owned by Mary E. Watson. The theory of appellant Mary E. Watson was, and, as she pleads it, is, that the one-third interest should be first exhausted, because she was only a surety for her brother in the trans-

action in regard to the Robb mortgage; and that her two-thirds interest is liable only for any deficiency; and she claims that the decree should have provided that she be subrogated to the mortgagee's rights for any money she had paid or might be required to pay as such surety; and claims also, in argument, that because, as cotenant, she has now paid off two thirds of the amount decreed herein to be due on the Robb mortgage, she is entitled to contribution. It should have been stated before, in regard to this matter, that it appears that, since the decree was rendered, an execution was issued and her two-thirds interest levied upon, and that thereafter she paid to the sheriff, under protest, the sum of $1,629.46. The trial court stated, in deciding the case, that appellant Mary E. Watson, because the Robb mortgage was a mere accommodation by appellant Mary E. and her sister for the brother, A. C. Watson, would be entitled to the relief she asks for in some form, but for the fact that other mortgages had been given by A. C. Watson on the undivided one-third interest to plaintiffs and others; but found as a fact that the parties holding such mortgages on the one-third interest had no notice of the secret arrangement between A. C. Watson and the sisters that the Robb mortgage was an accommodation; and that, therefore, appellant Mary E. Watson having a lien of which mortgagees had no notice, and the mortgagees having a lien by reason of their mortgages, it became a question of priority as between these two lienholders. As we understand it, from the arguments of plaintiffs and the appellant bank, they make no serious objection to appellant Mary E. Watson's being subrogated, provided it may be done without prejudice to their claims. Their contention is that, because they had no notice of the private agreement between A. C. Watson and his sisters, their claims are still prior; while appellant Mary E. contends that her claim should be prior, regardless of the question of notice.

Under the record, we hold that Mary E. Watson may be subrogated to the rights of Robb under his mortgage for the amount of money paid by her, but not to the prejudice of plaintiffs or the People's Savings Bank. These matters will be taken up in their order.

The trial court by its decree found and decreed that the Robb mortgage was the prior and paramount lien on the irregular tract; that two of the Clark mortgages, the one dated March 1, 1901, and the other, March 31, 1903, were liens on A. C. Watson's undivided one third of said irregular tract, prior and superior to the liens of any of the defendants except that of the said Robb mortgage; but that two thirds of the amount due on the Robb mortgage, with a like proportion of costs, should be made by a separate sale of Mary E. Watson's undivided two thirds of the said tract, and that whatever should remain of the proceeds of said sale, after the payment therefrom of said two thirds, should be applied to the payment of the balance of the Robb judgment; that the remaining one third due on the Robb mortgage, with a proportionate share of costs, should be paid by a separate sale of A. C. Watson's undivided one third of said tract, and that whatever should remain of the proceeds of such sale, after the payment therefrom of the one third due on the Robb mortgage, should be applied to the payment of the amounts due on the two Clark mortgages before referred to, and the mortgage held by the bank. Other provisions of the decree in regard to other lien holders will not be referred to, because, as we understand it, the finding of the trial court and decree as to other lien holders are not material to the determination of the points now before the court.

Appellant argues the question as to marshaling of assets, and objects to having that done; but the trial court, in an opinion filed, said:

"I am of the opinion that the doctrine of marshaling

securities cannot be invoked against the defendant Mary
Watson in this case by the creditors of A. C. Watson, be-
cause her property, sought to be appropriated to the pay-
ment of this Robb mortgage, does not belong to the com-
mon debtor of these different creditors.  *   *   *   Mary
Watson is not a debtor of any of the creditors of A. C.
Watson who are asking that her property be charged with
the payment of all of the Robb mortgage; therefore her
undivided two-thirds interest in the home farm should not
be charged with more than its share of the Robb mort-
gage.  *   *   *  It is the rule in this state that, when
mortgaged lands are sold in several tracts, each must con-
tribute ratably to the satisfaction of the mortgage debt.
Marshaling securities will not be permitted to the prej-
udice of third persons."

From this it appears that there was no marshaling of
assets, and, this being so, we deem it unnecessary to dis-
cuss that question. It has been stated before that the date
of the Robb mortgage was in 1895, and the court found
that it was a first lien upon all the irregular tract.

2. It is undoubtedly true, as con-
2. TENANCY IN
   COMMON:    tended by this appellant, that a tenant in
mortgage lien:
payment: con-   common, relieving the common property
tribution.
from a mortgage lien for the benefit of all
the tenants in common, is entitled to contribution from
cotenants out of their interests in the common property.
In support of this proposition, this appellant cites 30 Cyc.
47; *Oliver v. Montgomery,* 42 Iowa 36; *Koboliska v. Sweh-
la.* 107 Iowa 124; *Leach v. Hall,* 95 Iowa 611, 619. This
appellant claims for the last two cases that the holdings
are that it is more a question of contribution than subro-
gation. They contend that the only substantial difference
between the two is that the former, if allowed, could be
enforced by foreclosure, while the latter can only be by
partition, or perhaps, under peculiar circumstances, by an

equitable action for contribution; and they say that, as a lien, either is as binding and effectual as the other. They also cite on the question of contribution the case of *Mc-Namara v. McNamara*, 167 Iowa 479. And in this case, had appellant Mary E. Watson paid off the Robb mortgage before the final decree was entered in this case, she would have been entitled, at least as between herself and her brother, A. C. Watson, to contribution. We do not understand that, had she paid off incumbrances on the entire common property owned in the first place by her and her sister, and later by her and her brother, A. C. Watson, she would have been entitled to receive from her brother all she paid, but only his proportion. In other words, suppose two persons together own real estate upon which there is an incumbrance of $1,000, and one of them pays it off, the one so paying would be entitled to receive from the other cotenant, not $1,000, but $500, the proportion of each. It seems to us, though we may be mistaken, that counsel for this appellant, to some extent at least, confuses the doctrine of contribution of one's proportion of an incumbrance paid off, with the claim in this case that there was an agreement between A. C. Watson and his sisters that they were procuring the money for him as an accommodation, and that, under the agreement, she might be entitled to receive pay from A. C. Watson for the entire amount. But this appellant, up to the time the decree was rendered, had not paid off any part of the Robb mortgage, and it would seem to us that, until she had paid, she would not be entitled to contribution. Still, again, it seems to us that, by the decree, the trial court did, in effect at least,— though we do not understand that the court put it on that ground,—require A. C. Watson to make contribution; because it required the one-third interest of A. C. Watson to pay one third of the Robb mortgage, and Mary E. Watson, two thirds. These payments were in proportion to

their interest in the property. Counsel for this appellant say, as we understand it, that it makes but little difference to them whether her rights are protected under the doctrine of contribution, or whether, because she was surety for her brother, she is entitled to subrogation, or under the statute to have the property of the principal first exhausted, before resorting to that of the surety. Other suggestions occur to us as a reason why this appellant may not now have contribution as such, but it seems unnecessary to discuss this question in further detail.

3. It is next contended by this appellant that, as between themselves, an accommodated party and the party rendering the accommodation stand in the relation of principal and surety, the former the principal, and the latter the surety; and they cite in support of the proposition, 7 Cyc. 725, 726; *Aetna National Bank v. Hollister*, 55 Conn. 188 (10 Atl. 550); *American National Bank v. Junk Bros.*, 94 Tenn. 624 (30 S. W. 753, 28 L. R. A. 492). Appellees do not dispute this proposition, and their only point is that, even if this be true, the claim of this appellant would not be prior to their regularly executed and recorded mortgage liens, they having no notice of the private arrangement between appellant and her brother. This appellant further contends that, under Sections 3779, 3966 and 3967 of the Code, the surety may demand that his principal's property shall be first sold, and the surety's sold only to make up any remaining deficiency; and such was the theory upon which her counsel seem to have tried their case in the district court, under the pleading filed by them. Their claim was that they were entitled, under these provisions of the statute, to have the judgment rendered show that she was surety for A. C. Watson. They also claim that, having stated the facts and asked for general equitable relief, she is entitled to subrogation for any money that she, as surety, may have paid, or might thereafter be required

to pay. We think there would be force in this appellant's contention at this point, were it not for intervening rights of the plaintiffs under their mortgages. The question is whether the mortgage lien holders, not having any notice of the arrangement between the brother and sisters as to the Robb mortgage, should be prejudiced by allowing Mary E. Watson to be subrogated to Robb's rights.

Counsel for this appellant cite no cases
3. TENANCY IN     on this question of notice as applied to the
   COMMON:
   mortgages:       doctrine of subrogation. They do claim,
   mortgagee not
   cotenant.        however, under the doctrine of contribution,
that a tenant in common is seized of each and every part; that he holds a contingent title to all the parts, and cannot be divested of such title until all equities relating to the tenancy have been adjusted; and that a purchaser from a tenant in common, though he purchases for a valuable consideration without notice, can only take subject to the equities of the other tenant or tenants. They cite a number of cases from other jurisdictions, and *McNamara v. McNamara,* 167 Iowa 479. But these cases, with possibly one exception, were where one had purchased the interest of one of the cotenants, and thereby became himself a cotenant. Such was the situation in the *McNamara* case. That case, and perhaps some of the others cited, are cases where the interest of one tenant so purchased was at judicial sale; and under such circumstances, the doctrine of *caveat emptor* applies. And in that case, the contest was between cotenants themselves. The purchaser at judicial sale is held to be a cotenant in place of the one whose interest he had purchased. There was no question in that case such as is presented here. Even though the purchase of the interest of a cotenant is not at judicial sale, the purchaser takes the place, as cotenant, of the one whose interest he buys, and, as held in the *McNamara* case, supra, the lien of one cotenant paying off an incumbrance on

the common property, is not one entitled to be recorded. In such a case, the one purchasing such interest purchases subject to equities between the cotenants. In the instant case, the mortgagees (plaintiffs and the bank) became simply lien holders on the one-third interest of A. C. Watson, and were not purchasers, and did not become, as such mortgagees, tenants in common with the others. They were simply lien holders. The mortgages were properly recorded. It seems to us, as contended by appellee, that it is simply a question of priority of liens. The mortgages (plaintiffs' and People's Savings Bank's) being properly recorded, this appellant must be held to have notice of them, while plaintiffs and the bank had no notice of her claim or lien. While this appellant has a lien or claim against her brother, A. C. Watson, we think she is not entitled to have it decreed to be prior to the liens of the mortgages of plaintiffs and the bank. But for such intervening rights, her right as surety to be subrogated, even in advance of payment by her, could be protected by the decree. *City of Keokuk v. Love*, 31 Iowa 119; *Bankers Surety Co. v. Linder*, 156 Iowa 486. This, of course, is true as between this appellant, her brother and Robb, as to his mortgage, which this appellant signed and upon which she concedes she is liable. As between the parties, she would doubtless be entitled to subrogation. But the question in this case is whether, under this record, she is entitled to such relief as against third persons, who, without notice, have rights intervening. No cases are cited by this appellant upon this proposition. It is contended by counsel for plaintiffs, who are the only ones besides this appellant who argue the question of subrogation, that the plaintiffs were not in privity to the accommodation contract between this appellant and her brother, and that the surety statutes before cited have to do only with the parties who are so in privity to the contract; that such arrangement cannot affect third persons

who have intervening rights without notice. It is not claimed, and could not be from the record, that plaintiffs and the bank had any notice that there was any undisclosed agreement between this appellant and her brother which would create the relation of principal and surety. They seem to have relied upon the record, showing simply a mortgage by the two sisters to the insurance company, and took their mortgages relying thereon.

As before stated, they concede that, as between Robb, this appellant and A. C. Watson, this appellant would have the right to ask that the Robb mortgage be satisfied from the undivided one third of the irregular tract owned by A. C. Watson, but claim that, as between intervening rights of plaintiffs and the bank, who have mortgage liens, without knowledge or notice of the arrangement, this appellant may not set up her suretyship claim as a prior claim to that of the plaintiffs, and they say that the real question involved is one of priority of liens or the priority of rights. The appellee cites no authority to sustain this contention. The very authority cited by appellant (7 Cyc. 725) is to the effect that, as between himself and the party accommodated, the accommodation party is, in effect, a surety, and his right to recourse against the party accommodated is that of a surety against his principal debtor. Plaintiff concedes this to be the rule. Plaintiff does not cite any authority on the question as to the rights of intervening third persons without notice. Upon an independent investigation, in which we are somewhat limited as to time, we find this doctrine, in 37 Cyc. 383:

"Subrogation, being an equity springing from the relation between the parties, and created and enforced for the benefit and protection of the one in whose favor it is originated, may be asserted or waived at pleasure, either expressly or by implication, but not to the detriment of the subrogee's creditors, who, in turn, are entitled to subro-

gation to his right of subrogation, and may be assigned
and enforced by the assignee. The ordinary doctrine of
estoppel also applies. Thus the equitable right to substi-
tution is waived by the conduct of a would-be subrogee in
urging another person to buy land without disclosing to
him an intention to assert, in any event, any sort of claim
to it, resulting from facts or rights then existing, and
without notifying him of the existence of any such facts
or contingent claim. A creditor is not entitled to subroga-
tion to a lien which, but for his own laches, he might have
had."

And at page 387, same volume, we find this:

"The right of subrogation is one of equity merely, and
due diligence must be exercised in ascertaining it. Laches
in taking advantage of the right will forfeit it; and subro-
gation is not allowed in favor of one who has permitted
the equity he asserts to sleep in secrecy until the rights of
others would be injuriously affected by its assertion and
enforcement. Thus a surety who for an unreasonably
long time has permitted himself to appear in the light of
the principal debtor cannot be subrogated, to the preju-
dice of intervening equities, although the rule is otherwise
where there are no supervenient equities; and, where the
rights of third persons have not intervened, it has been
held that a delay, short of the statutory period of limita-
tions, will not bar a party of his right to be subrogated to
the rights of another."

So that while, as between the parties to the accommo-
dation agreement, this appellant would be entitled to be
subrogated to the rights of Robb, because of the surety-
ship relation, it is quite clear that, as to the plaintiffs and
the bank, because without notice, and because this appel-
lant permitted herself to appear in the light of principal
debtor, in that the record showed that this appellant, with
her sister, had signed the Robb mortgage, and there was

nothing to indicate to plaintiffs or bank that there was any suretyship arrangement, she ought not to be permitted to assert, as against them, her claim of suretyship and ask subrogation to their prejudice. We think the same rule would not apply to the Robb judgment as to the Robb mortgage.

It is our conclusion, then, that, for the reasons given, this appellant has lost or waived her right of subrogation as to the plaintiffs and the bank.

4. MORTGAGES: priority: unrecorded mortgages: notice: evidence.

4. The foregoing is a re-adoption of the opinion of Mr. Justice Preston upon the original submission of the case. There remains to be considered the question of priority as between the plaintiffs' mortgages and the mortgage of the defendant People's Savings Bank. The petition for rehearing was granted on this point.

The first of plaintiffs' mortgages was for $6,100, and was executed on March 1, 1901. The second was for $8,900, and was executed on March 3, 1903. These mortgages were both withheld from the records until December, 1906. In the meantime, a part of the real estate included in the plaintiffs' mortgages was mortgaged by Watson to the People's Savings Bank, on July 11, 1905. This mortgage was duly recorded two days later. The amount thereof was $1,850. The plaintiffs did not place their mortgages on record until shortly after the discovery of the mortgage of the defendant bank. Right of priority over the mortgage of the defendant bank is predicated upon the claim that, prior to July, 1905, the plaintiffs had notified Castner, the cashier of the defendant bank, of the existence of their mortgages. This part of the plaintiffs' case is stated succinctly in the written opinion of the trial court as follows:

"In the case, the plaintiff undertook to prove notice to the bank of the existence of their mortgages, before the

date of the execution of the bank mortgage. Both plain-
tiffs testify to conversations with Castner, the cashier of
the bank, had before the date of the bank mortgage, in
which said cashier was told that plaintiffs had mortgages
covering all the real estate owned by Alexander C. Watson.
The cashier denies having the talk with Grant Clark; ad-
mits the conversation with John R. Clark, in substance,
but fixes the time as after the bank mortgage had been
executed and recorded. All three of these witnesses ap-
pear to be credible, with equal opportunity of knowing and
remembering the matters testified to, and the testimony of
the plaintiffs appears as reasonable as that of the cashier.
I am of the opinion that the contention of the plaintiffs
at this point is sustained by the weight and preponderance
of the evidence, taking into consideration all the facts and
circumstances of the case, as shown by the evidence."

It will be seen from the above that the plaintiffs had
the advantage of two witnesses in their behalf against one
in behalf of the defendant. Ordinarily, this count would
furnish ground for claiming a preponderance for the plain-
tiffs. It should not be overlooked, however, that the plain-
tiffs are witnesses in their own behalf. The fact testified
to by them is one of controlling importance, and rests up-
on their indefinite recollection of a casual conversation
which is alleged to have occurred ten years prior to the
time of the giving of their testimony. There are circum-
stances appearing in evidence of considerable significance,
and these should be considered with great care in weigh-
ing the credibility of this conflicting testimony. The stat-
ute provides a very simple method whereby a mortgagee
may protect his priority of lien against all subsequent pur-
chasers, by simply filing the same for record. The opera-
tion of the statute, when complied with, works equitably
to the protection both of the mortgagee and of the public.
For some reason, the plaintiffs did not avail themselves of

the recording statute. Though pressed for a reason upon the witness stand, they gave no explanation of why their mortgages were not recorded. The only fair inference that can be drawn from the evidence is that they preferred not to record them, and that they intentionally withheld them. Watson, the mortgagor, was insolvent. He had, however, several hundred acres of land, all of which was encumbered, and all of which was included in the plaintiffs' mortgages. His so-called "home place" consisted of 133 acres, of which Watson was the owner of only an undivided one third. The remaining two thirds were owned by his sister. Brother and sister occupied the tract together as a home. Watson understood that his interest in the "home place" was not included in the Clark mortgages. He testified that such was his understanding with the plaintiffs; that the plaintiffs drew the mortgages and advised Watson that they did not include the "home place;" and that he signed the same without reading. This testimony was not denied. Watson in good faith informed Castner that his interest in the "home place" was clear, except a $2,000 mortgage to Robb. Castner examined the public records, and found the title to be in the condition thus represented. In reliance thereon, he parted with full consideration for the mortgage taken by him. It is undisputed that, after the mortgages of both parties had been recorded, there was more or less conversation and negotiation between them concerning a proposed sale of one to the other of their securities. The substantial difference of the testimony between the parties is that the plaintiffs claim that these negotiations began before July, 1905; whereas the defendant claims that they began after the recording of the mortgages, when the conflict of interest between them was apparent. Although the plaintiffs testify that conversations were had prior to July, 1905, they are unable to fix the event within a less space of time than 18 months; nor are they able to

show any satisfactory reason why such negotiation should occur, in the absence of apparent conflict of interest between them. No explanation is given why the plaintiffs should prefer to hold their mortgages from public record, and yet be willing to publish their existence orally. No business relations appear ever to have been had between the plaintiffs and Castner. They do not appear ever to have done any business previously with the defendant bank. The evidence in the record fails to disclose a satisfactory reason why the conversation claimed by plaintiffs should have been had prior to July, 1905. We think their direct testimony to the fact should be held to the test of reasonableness in the circumstances shown, and that its credibility should be doubted, if it fails to meet such test. There is much in the attitude of the parties, as disclosed by their pleadings prior to the trial, which tends to weaken the testimony of plaintiffs on this point. This action was begun by the plaintiffs in July, 1913. The defendant answered December 18, 1913. The case was reached for trial on February 2, 1915. On that date, plaintiffs filed a pleading wherein for the first time they charged actual notice to the defendant bank. Castner was not at that time connected with the defendant bank, nor was he then a resident of the state, but was a resident of the state of Washington. Time had to be obtained for the taking of his testimony. On April 9, 1914, the plaintiffs filed a pleading in the case as against Mary E. Watson, as follows:

"That plaintiffs hold a mortgage upon all of the real estate described in its substituted petition, including that part of the premises upon which George L. Robb has a mortgage which is prior to plaintiffs' mortgage, including the mortgage of the Peoples Savings Bank, which is claimed by said bank to be prior and superior to the mortgage claimed by plaintiff upon the same tract of ground. Plaintiff makes the answer of George L. Robb, and also the an-

swer of the Peoples Savings Bank, Exhibits 1 and 2, re-
spectively, of this amendment by way of reference to have
the same force and effect as if rewritten, and which an-
swers are filed in this proceeding in the office of the clerk
of the district court of Monroe County, Iowa. Plaintiff
further states that the George L. Robb mortgage is a lien
upon the interest owned by Mary E. Watson in and to the
premises described in the answer of George L. Robb, Al-
exander C. Watson heretofore being the owner of an un-
divided one-third interest, and Mary E. Watson the owner
of an undivided two-thirds interest therein. That the
remaining portion of the tracts of ground described in
plaintiffs' petition is insufficient to satisfy plaintiffs' claim;
and, if the entire amount of the mortgage of George L.
Robb is satisfied out of the interest of Alexander C. Watson
in the premises referred to in the answer of George L.
Robb, and the mortgage of the Peoples Savings Bank is es-
tablished as a prior lien to that of plaintiffs in and upon
the interest of Alexander C. Watson, the properties will
be insufficient to satisfy plaintiffs' claim."

It cannot be said that the foregoing pleading was an
admission of the priority of the mortgage of the defendant
bank; but, in view of the fact that the plaintiffs had not,
in any pleading prior to February 2, 1915, alleged any no-
tice of any kind to the defendant bank, the fair implication
of the pleadings as a whole, as they appeared for a period
of 18 months prior to the trial, was that the defendant
bank's mortgage was, for want of notice, superior to those
of the plaintiffs. The testimony discloses no conduct on
the part of Castner which was inconsistent with his testi-
mony on this subject, whereas the conduct of the plaintiffs
was inconsistent with their testimony. Taking the case in
all its circumstances, therefore, we think the testimony in
behalf of defendants the more reasonable, and therefore
the more credible. We reach the conclusion that the proof

of actual notice to the defendant bank prior to July 11, 1905, is not of that satisfactory character which should obtain in such cases. It follows that priority should have been awarded to the defendant bank, and the decree below will·be modified to that extent. In all other respects, the decree below will be affirmed, except that, because of the holding at this point, the plaintiffs and defendant bank will change places as to priorities as to the bank's mortgage, and to that extent.—*Modified and affirmed.*

GAYNOR, C. J., WEAVER, SALINGER and STEVENS, JJ., concur.

LADD and PRESTON, JJ., dissent.

PRESTON, J.—I dissent from Paragraph 4 of the opinion.

Briefly, there were two witnesses for plaintiffs, to one for the bank, on the question of notice. This, of course, is not always the criterion. But the trial court saw them, and stated and found that they were of equal credibility. They were equally interested. I see nothing particularly improbable in the story of the two. Furthermore, I think the record shows that plaintiffs had been carrying Watson for years in his cattle business, and that this was, and had been for years, known generally in the community, and that Watson had mortgaged everything to plaintiffs. We have a rule that we give some consideration to the findings of the trial court. I see no reason, in this case, to bend or break the rule. I would affirm on all points.

LADD, J., joins in this dissent.