MARY TOLL, Appellee, v. R. P. TOLL et al., Appellees; UNION NATIONAL BANK, Appellant.

SUBROGATION: Subrogation as Affecting Junior Mortgagee. Where tenants in common of land as principal and surety jointly mortgage their undivided interests in order to secure the debt of the principal, the surety may, after the land is partitioned and set off in severalty, compel the satisfaction of the mortgage as far as possible out of the lands assigned in severalty to the principal, and be subrogated to all the rights of the mortgagee in case he is compelled to pay the principal's debt; and this right is enforcible against a subsequent mortgagee of the principal's undivided interest alone, when such mortgagee takes his mortgage with actual knowledge *that the mortgagors in the prior mortgage occupied the relation of principal and surety.*

Headnote 1:  37 Cyc. pp. 422, 428.

*Appeal from Boone District Court.*—H. E. FRY, Judge.

DECEMBER 15, 1925.

THIS is an action in equity for the partition of real property and for other relief in equity. The defendants, except R. P. Toll, are the holders of mortgage or judgment liens on the whole or an undivided part of the land. The case is fully stated in the opinion. Mary Toll, the plaintiff, is now deceased, and Frank Toll, the executor of her estate, has been substituted as plaintiff. There was a decree below in favor of plaintiff, as prayed, and the Union National Bank of Ames alone appeals.—*Affirmed.*

*Nichol & Nichol,* for appellant.

*T. J. Mahoney* and *F. L. Mackey,* for Mary Toll, appellee.

*Lee & Garfield* and *R. L. Bryant,* for J. C. Judge and S. A. Brooks, appellees.

*W. W. Goodykoontz,* for Farmers Savings Bank and First National Bank.

*Tinley, Mitchell, Ross & Mitchell* and *W. W. Goodykoontz,* for other appellees.

STEVENS, J.—Mary and R. P. Toll were, at the time this action was commenced, the joint owners of the N½ of Section 1, Township 82, Range 25, Boone County. On December 2, 1919, they executed a joint negotiable promissory note for $24,000, with interest coupons attached, and also a note for $1,200, together with mortgages upon the above described real estate, to secure payment thereof to Annis & Rohling Company, of Council Bluffs, Iowa. At the time of the trial, the $24,000 mortgage was held by the Metropolitan Life Insurance Company, named as a defendant. On November 10, 1921, R. P. Toll executed a note for $12,000 to the Union National Bank of Ames, together with a mortgage upon his undivided one-half interest in the above real estate, subject to the prior mortgages of Annis & Rohling Company, to secure the payment thereof. The other defendants are judgment creditors whose claims were adjudicated by the decree, and who have not appealed.

The only questions, therefore, presented for review are

those arising out of the respective claims of Mary Toll and the Union National Bank. Appellee alleged in her petition and a cross-petition filed by her that she was the owner of an undivided .one-half interest in and to the above described tract, and that she signed the notes and mortgages to Annis & Rohling Company as surety only. She asked that the land be partitioned, and that, so far as possible, the incumbrances be paid out of the interest of R. P. Toll, and that she be subrogated to all of the rights and equities of the holders of the Annis & Rohling mortgages, and for all general equitable relief. The prayer for partition of the land was granted without objection, and appellee was given the NE¼ and R. P. Toll the NW¼ of the fractional one-half section above described. The Ames National Bank resisted the claim of appellee that she signed the notes to Annis & Rohling Company as surety only, and denied her alleged right to be subrogated to the rights and equities of the holders thereof. The court, on this branch of the case, found that appellee signed the notes with R. P. Toll, who is her son, as surety only, that appellant received its mortgage with notice of that fact, and that she was entitled to be subrogated to all of the rights and equities of the prior mortgagees; and so decreed, requiring that the NW¼ be first exhausted for the payment of the prior mortgages, and providing the order and manner of sale thereof on special execution. The decree made further provision for the protection of appellee's right of subrogation, but it is not necessary to state the terms thereof.

Two general propositions are urged by appellant as grounds for reversal: (a) that the evidence is wholly insufficient to establish appellee's claim that she signed the notes to Annis & Rohling Company as surety only; and (b) that appellant received its mortgage without notice that appellee signed the same as surety, and that she is estopped by her conduct, as against appellant, to assert a right to subrogation. We will dispose of these propositions in the order stated.

I. Mary and R. P. Toll purchased the north fractional one half of Section 1, Township 82, Range 25, Boone County, several years ago, and lived on it a good many years, improving it and paying the incumbrances thereon. Later, they moved from the farm to Kelly, a near-by town, where they resided at the time

the notes and mortgages were executed to the Annis & Rohling Company. R. P. Toll, during the recent land boom, engaged extensively in real estate speculations, becoming so involved that he could not pay his obligations, and at the time of the trial had been adjudged a bankrupt. The evidence is quite conclusive that Mary Toll received no part of the proceeds of the $24,000 mortgage; that the same were used by R. P. Toll in real estate transactions. Both R. P. and Mary Toll testified that the loan was procured for him, and that Mary signed the notes and mortgages at his request and for his sole benefit. It was not contemplated, at the time the documents were executed, that Mary Toll would receive any part of the proceeds, or that she was interested therein. The evidence satisfies us that she signed the notes as surety only, and that such was the purpose and understanding of the parties at the time.

II. The general rule that, where a surety has paid the debt of his principal, he is entitled to be subrogated to all the rights and equities of the creditor is, of course, conceded. It is contended, however, that, where the arrangement under which the alleged surety who has joined in a mortgage on real estate signed the obligation of his principal was secret, such surety cannot assert a right of subrogation as against subsequent mortgagees without notice thereof. Such is our holding in *Clark Bros. v. Watson*, 180 Iowa 721.

If we assume, without expressing an opinion thereon, that the holding in the above case is controlling here, the fact issues involved at this point present a more doubtful question for review. R. P. Toll and Mary Toll both transacted their banking business at a bank in Kelly, in which some of the directors and officers of the Union National Bank of Ames held stock. The account was kept in the name of the son, who appears to have had the general management and control of the farm and of the proceeds received as rental therefrom. One of his early speculations was in land owned by a former president of the Ames Bank, who was, however, at the time of the transaction, deceased. All of the $24,000 was invested by R. P. Toll in real estate and lost by him. He became indebted to appellant in a sum approximating $20,000, for which it held his past-due notes at the time the mortgage was executed. R. P. Toll had a contract for the

purchase of a farm referred to in the evidence as the Anfinson farm, which he was unable to carry out. On the day the mortgage was executed, appellant took an assignment of the Anfinson contract, or a deed direct to it from the seller. R. P. Toll was credited with $6,000 on his indebtedness to the bank on this transaction. The note which the mortgage was executed to secure was for the balance due appellant. R. P. Toll testified that, at the time the mortgage was executed, and on other occasions, he informed the president and cashier of appellant bank that, while the Annis & Rohling mortgages covered the half section, the indebtedness secured thereby was his own, and that his mother signed the notes as surety only. Both of the above designated officers of the bank deny that he made any such statement to them. The president of the bank, in effect, admitted that he knew that the proceeds of the $24,000 loan were received and used by R. P. Toll in real estate transactions, and that this fact and his speculations in real estate were generally known in Ames. The mortgage, as stated, covers only the undivided interest of R. P. Toll. The effect of the court's decree is to double the loan on the NW¼, and perhaps, in effect, to wipe out the lien of appellant's mortgage. The officers who transacted the business with R. P. Toll knew that he was heavily involved, and that nothing but a return of the high price for the land in which he had some equity could save him from insolvency. Appellant advanced nothing to R. P. Toll when the mortgage was executed, but, as stated, secured existing indebtedness only. The officers of the bank knew that R. P. Toll owned an undivided one-half interest in the farm; that Mary Toll owned the remaining one-half interest; that the proceeds of the $24,000 mortgage were received and used by him in his private transactions; and that Mary Toll was not interested therein. These facts, together with the testimony of R. P. Toll that he informed the president and cashier of the appellant bank that his mother signed the notes for him only, clearly made out a prima-facie case for appellee. The prima-facie case thus made out is opposed largely by the denial of the president and cashier of the appellant bank of the truth of Toll's testimony. This conflict in the testimony presents a question of the credibility of the witnesses, and one extremely difficult for this court, upon the rec-

ord before us, to pass upon. In this situation, some reliance must be had upon the finding of the court below. The acceptance by the officers of appellant of the $12,000 mortgage on the undivided one-half interest of R. P. Toll in the land was obviously for the purpose of obtaining the best possible settlement, under the circumstances, of his indebtedness to the bank.

After carefully weighing and analyzing the testimony, we reach the conclusion that appellant took the mortgage with notice, actual or constructive, of the terms and conditions upon which Mary Toll signed the notes and mortgages to Annis & Rohling Company, and that she was entitled, upon payment of the whole or any part thereof, to be subrogated to the rights and equities of the holders of said mortgages.

It follows that the judgment and decree of the court below must be and is—*Affirmed.*

FAVILLE, C. J., and DE GRAFF and VERMILION, JJ., concur.