OHIO CASUALTY INSURANCE COMPANY, Appellant, v. D. D. GALVIN, et al., Appellees.

No. 43623.

OCTOBER 20, 1936.

REHEARING DENIED FEBRUARY 19, 1937.

Bump, Graeser, Walters & Bump, for appellant.

Leming & Hobson, for D. D. Galvin, Cecil Galvin, G. H. Galvin and S. G. Galvin.

Leon Miller, for Board of Supervisors of Marion county, composed of Jerry Speed, M. A. Barnes, Arie H. Bogaard, and G. W. Paardekooper, Auditor of Marion county, Iowa, and Marion county, Iowa.

HAMILTON, J.—Judgment was obtained against the defendant, D. D. Galvin, and against the Ohio Casualty Insurance Company in an action brought by Marion county, Iowa. The judgment was entered December 5, 1935. The basis of the judgment was failure of Galvin as county treasurer to account for tax money paid into his office in the total sum of $2731.06. The Casualty Company, defendant in that action, was surety on the county treasurer's official bond. The bond company was compelled to pay the county the amount of the judgment, and upon payment took an assignment of the judgment. The present suit is brought in equity, auxiliary to execution, to subject the salary of the county treasurer, Galvin—who continued to act in such capacity after the judgment was obtained—to the payment of the judgment. Galvin by his answer set up the defense that he was a resident of this state, a married man and the head of a family, and that his personal earnings, or salary, were exempt, and the trial court so found and determined. Hence this appeal.

Appellant bases its alleged right to a reversal upon the theory that the county treasurer, who failed to account to the county for public funds, may not plead and claim his salary due

him from the county is exempt: (a) That the surety company is subrogated to all rights, privileges and remedies of the county; (b) that a fiduciary who has violated his trust may not have the benefit of the exemptions as against recovery of the funds misappropriated; that offset is proper against salary due a public officer for such default; (c) that the liability, although reduced to judgment, is not a "debt" within the meaning of the exemption statute; that such a construction of the exemption laws would be against public policy.

As to the question of subrogation there can be no debate. Where a surety has paid the debt of his principal, he is entitled to be subrogated to all the rights and liabilities against the principal. Toll v. Toll, 201 Iowa 38, 206 N. W. 117; Mains v. Barnhouse, 209 Iowa 963, 229 N. W. 218.

Counsel for appellant frankly concedes that he has been unable to find any case directly in point. This is due, no doubt, to the fact that when a public officer defaults, he does not usually continue in office. It is rather a novel situation when an officer is adjudged guilty of failure to account for funds and still retains the office. This would have a rather strong tendency to indicate that there was no personal culpability charged against the treasurer himself. The record is silent on this point.

■■■ Appellant's argument is based upon the principle that it is contrary to public policy to permit one to benefit by his own wrong, and that the legislature never intended that the exemption laws should be used for the purpose of protecting one who has been unfaithful to his trust as a public official, and cites many cases where this principle has been applied. Counsel for appellant contends very strenuously that this court should not put a construction upon the exemption laws, the effect of which would be to encourage breach of fidelity by a public official. As bearing on the legislative intent and as indicative of the public policy of this state in reference to matters somewhat analogous to this case appellant makes reference to the following sections of the 1935 Code of Iowa: section 11759, section 11760-c1, section 1960, section 3644, and section 6234, all of which deal with particular matters which the legislature has seen fit to except from the protection of the exemption statutes, all of which were intended to prevent a debtor from benefiting by his own wrong, and it is no doubt true that these specific statutes do tend to support appellant's theory. The difficulty, however, is that such

statutes have a two-edged implication which counsel for appellee has quickly grasped and called to our attention, and that is, that the legislature must have felt or understood that it was necessary to have these special statutes creating these special exceptions from the provisions of the exemption laws, which would indicate that the law-making body must have deemed the exemption laws applied to all who came within the letter of the law; hence the necessity for making the exception; and as we view the matter, there is much force in appellee's contention in this respect.

The statutory provision in controversy here, section 11763, reads as follows:

"Personal earnings. The earnings of a debtor, who is a resident of the state and the head of a family, for his personal services, or those of his family, at any time within ninety days next preceding the levy, are exempt from liability for debt."

It is the well-established rule in this and most other states that laws exempting the property of debtors from seizure for the payment of their debts are to be liberally construed, to the end that the purpose for which they were enacted may be accomplished. Millington v. Laurer, 89 Iowa 322, 328, 56 N. W. 533, 535, 48 Am. St. Rep. 385.

This court has repeatedly said in substance in discussing exemption statutes that the primary object of such statutes is not merely to protect the earnings of the debtor from seizure, but to preserve them for the benefit of his family against any appropriation for the payment of his debts not authorized by law, to which he does not consent, and has repeatedly and consistently refused to take cognizance of any method resorted to by a creditor which directly or indirectly attempted to evade or nullify the exemption statutes. Thus, an employer cannot purchase claims against a laborer and set them off against his earnings, which are exempt. In the Millington case, supra, the plaintiff sued to recover for his personal services for painting pictures. The defendant held a judgment against the plaintiff which had been assigned to him. It was claimed that the bill was not entirely for services, inasmuch as the plaintiff furnished the materials used for the painting. The court found against the defendant and the case was affirmed. This court said:

"The defendant could not have appropriated the money in

controversy by means of an execution, the ordinary method of enforcing a judgment, but seeks to accomplish what he is prohibited from doing directly by indirect means. This the law will not permit.''

The object of the legislature in exempting personal earnings is not alone for the benefit of the debtor, but for the family of the debtor, and not only he, but his family, is protected from the seizure of their personal earnings for any debt of a debtor who comes within the provisions of the exemption statute. See also Banks v. Rodenbach, 54 Iowa 695, 7 N. W. 152.

In the case of Schooley v. Schooley, 184 Iowa 835, 842, 169 N. W. 56, 58, 11 A. L. R. 110, we find this language:

''It is not to be overlooked that the exemption laws are not intended simply for the protection of the debtor, but primarily for the protection and support of his family; and to that end the statute will be liberally construed.''

Galvin comes within the terms and provisions of this statute exempting personal earnings. He is a resident of the state, the head of a family, and the money sought to be appropriated by the execution consists of his salary or personal earnings. But it is appellant's contention that the word ''debt'' as used in this statute was not intended by the legislature to include a judgment having for its basis failure to account for public funds by a public officer; that the recovery was not on contract, but on tort, and that while the judgment is rendered and may in a sense be called a debt when so rendered, it is not a debt in the correct meaning of the word as used in this statute. Counsel for appellant argues that as between Galvin and the county, the relation of debtor and creditor did not exist; that Galvin did not owe the county any money; that Galvin did not own the money collected by him or his office; that it was tax money belonging to the state of Iowa, the county, city and other taxing bodies, and that it was his duty to turn such money over to the proper bodies, but that he did not owe it in the sense that the relation of debtor and creditor existed.

We think it must be admitted that the word ''debt'' does not have a firm and settled meaning or a fixed or invariable application. Swanson v. City of Ottumwa, 118 Iowa 161, 91 N. W. 1048, 59 L. R. A. 620. The courts of many states make a

distinction between liability ex contractu and liability in tort, or ex delicto, and in some jurisdictions it has been held that where a claim arising out of a wrong or tort has become liquidated by judgment, such judgment is not a debt. 17 C. J., page 1378, Par. 6 and cases cited under note 7. However, our own court is firmly committed to the rule that whether the obligation is ex contractu or ex delicto, when it is reduced to judgment it becomes a debt then fixed and certain. The judgment which is the basis of this suit has for its basis matters pertaining to both liabilities, ex delicto and contractual obligations. The only basis for the suit against the bond company was its contract, and as we understand it, the suit was based upon the bond given by Galvin, upon which bond the Casualty Company was surety. The court found that the treasurer, principal in the bond, had failed to account for public funds and that the provisions of the bond were therefore breached, and rendered judgment on the bond against the defendants as principal and surety thereon. While it involved a wrong committed by the treasurer in failing to account, which is made a crime in this state, the action was not based on this tort. But even though it were, under the holdings of a long line of cases in this state, it would make no difference after the claim was reduced to judgment. It then became a debt within the meaning of the word as used in this exemption statute. This was the basis of the lower court's decision set forth in a very carefully prepared and able, written opinion filed in the case.

In the case of Schooley v. Schooley, supra, at page 841, the court, after reviewing our own cases and cases from other jurisdictions defines the meaning of the word "debt" as follows:

"Debt means a liability to pay a sum certain; and it makes no difference how the liability arises, whether by contract or whether it be imposed by law without contract."

Referring to an early case, Johnson & Stevens v. Butler, 2 Iowa 535, the court in the Schooley case made use of the following language:

"The suit was brought and an attachment sued out in this state on the theory that the action on the judgment was ex contractu. The trial court ruled, in effect, that the action upon the judgment must be treated as partaking of the nature of the

original action: that is, ex delicto. This court overruled the trial court, saying:

'But when a judgment has been recovered for tort, it then becomes fixed and certain. It is a debt, as much as if it were recovered upon a promise.'

The same proposition is reiterated in Warner v. Cammack, 37 Iowa 642. Other authorities of like character could be multiplied quite indefinitely.''

In the case of Jewell v. Nuhn, 173 Iowa 112, at page 128, 155 N. W. 174, 179, Ann. Cas. 1918D, 356, Justice Salinger sets forth in his opinion an extensive treatise on the meaning of the word ''debt'' and in that opinion, we find this language:

''We said in Johnson v. Butler, 2 Iowa (2 Clarke) 535, 545, that a judgment recovered for a tort is a debt, and will be the basis for attachment proceedings as much as if it was recovered upon a contract. Warner v. Cammack, 37 Iowa 642, is that the liability of a person who obtained money from another by means of false and fraudulent representations in the sale of a patent right is a debt, within the meaning of that word as used even in a remedial statute like the one creating a homestead exemption; and it was accordingly held that the homestead of the person selling the patent, acquired after such sale, but before judgment rendered in an action to recover damages on account of such fraudulent representations, was liable to such judgment. This case is squarely approved in Stanhope v. Swafford, 77 Iowa 594, at page 596, 42 N. W. 450. In Walker v. Walker, 117 Iowa 609, at page 611, 91 N. W. 908, the Warner case and the Stanhope case are treated as authority for the proposition that, if one receives money as agent and converts same to his own use, an indebtedness is thereby created.''

In the case of Spilde v. Johnson, 132 Iowa 484, 486, 109 N. W. 1023, 1024, 8 L. R. A. (N. S.) 439, 119 Am. St. Rep. 578, we find this language:

''As early as the case of Johnson v. Butler, 2 Iowa 535, we held that the obligation of the judgment defendant is a debt, and that an action brought upon a judgment is ex contractu, without regard to the nature of the original cause of action on which the judgment was recovered. This doctrine has the support of the weight of authority. (Citing cases.)''

Our court has never receded from this position and as we understand appellant's argument, it is not claimed that there are any decisions of this state to the contrary. Counsel for appellant attempts to distinguish by pointing out that in none of these cases was the action based upon defalcation of a public official. We can see no escape from the conclusion reached by the trial court that when the claim was reduced to judgment it became a fixed and binding debt. The end sought to be reached by appellant is one which might very appropriately be presented to the law-making body, making an obligation arising from defalcation of a public officer another instance properly to be excepted from the provisions of the exemption statute. It would not be proper for this court, under the guise of construction of a plain and unambiguous statute which has been many times applied, and concerning which we have taken such a decided stand, as shown by the cases hereinbefore referred to, to hold that the judgment on which the execution in this case was issued was not a debt within the meaning of the exemption statute heretofore referred to; and it matters not that this is a claim due the county.

■■■ By the overwhelming weight of authority, exemption statutes are binding upon the state or municipality. 11 R. C. L., page 51, 25 C. J. page 98. In the case of Fink v. O'Neil, 106 U. S. 272, 1 S. Ct. 325, 27 L. Ed. 196, the United States Supreme Court held that the United States was bound by the same exemption laws as private individuals. Our own court applied this principle in the case of State v. Geddis, 44 Iowa 537, where the state sought to recover by attaching proceeds of the sale of a homestead.

We have not discussed in this opinion all of the theories advanced by counsel for appellant in his very able and exhaustive argument, deeming it unnecessary in view of the fact that those to which we have given our attention are necessarily decisive of the case.

The judgment of the trial court is therefore hereby affirmed. —Affirmed.

PARSONS, C. J., and RICHARDS, MITCHELL, DONEGAN, ANDERSON, and STIGER, JJ., concur.